■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH COTARELO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Owens, J.), rendered June 15, 1982, convicting him of robbery in the first degree, robbery in the second degree and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

Criminal Term did not err in failing to charge, as an affirmative defense to robbery in the first degree, that the firearm displayed was not a loaded weapon from which a shot, readily capable of producing death or serious physical injury, could be discharged (Penal Law § 160.15 [4]). From the evidence adduced, there was an insufficient basis upon which to conclude that a charge with respect to the affirmative defense was mandated.

It is well settled that where there is proof that a defendant, in the course of a robbery, displays or utilizes a "weapon" which is incapable of discharging a shot which could cause death or serious physical injury, an affirmative defense to the crime of first degree robbery has been set forth *(see,* Penal Law § 160.15 [4]; *People v Lockwood,* 52 NY2d 790; *People v Lyde,* 98 AD2d 650; *People v Stephens,* 97 AD2d 523; *People v Royster,* 91 AD2d 1074, 1075; *People v Knowles,* 79 AD2d 116, 120; *People v Castaldo,* 72 AD2d 568; *People v Waddell,* 66 AD2d 807; *People v Parks,* 59 AD2d 543, 544; *People v Santucci,* 48 AD2d 909). It is, however, incumbent upon the defendant to prove by a preponderance of the evidence that the subject weapon was unloaded or incapable of being fired *(People v Baskerville,* 60 NY2d 374, 380; *People v Brown,* 108 AD2d 922, 923). "Inducing in the mind of a robbery victim— through any one or more of the five senses * * * the belief that the perpetrator has an available firearm ready to be used constitutes a sufficient display of a firearm within the fair intendment of the statute and an aggravating circumstance justifying a conviction for the crime of robbery in its highest degree (unless the defendant affirmatively proves [Penal Law, § 160.15, subd 4] that the firearm used was not a 'deadly weapon' [Penal Law, § 10.00, subd 12])" *(People v Jenkins,* 118 Misc 2d 530, 533). Stated succinctly, the affirmative defense set forth in Penal Law § 160.15 (4) "affords the defendant an opportunity to fight his way out of a first degree conviction if he can prove that the gun was either unloaded or incapable of being fired" (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 160.15, at 206). It bears noting, furthermore, that the aforesaid provision has been upheld against constitutional challenge *(see, People v Clark,* 41 NY2d 612, 617, *cert denied* 434 US 864).

The defendant's argument is premised upon the conclusion contained in the report of an investigating police officer that the weapon involved was "apparently" firing blanks. That conclusion was based upon the officer's inability to turn up

any spent shells following a detailed investigation of the crime scene. Nor were any bullet holes made in the plate glass window of the premises. The officer at no time stated, with any degree of certainty, however, that the weapon involved was unloaded or inoperable. Evidence of this speculative nature, coupled with the testimony of two eyewitnesses to the effect that they had heard the firing of shots during the incident, gave rise to the defendant's argument on appeal that the firearm displayed was not a loaded weapon from which a shot could be discharged capable of causing death or serious physical injury. Significantly, the main thrust of the defendant's argument on appeal as well as his trial strategy was not that he had robbed the premises with an inoperable weapon but, rather, that he had not committed the robbery at all and that the People's case was essentially a matter of mistaken identification (cf., People v Hassan, 79 AD2d 713). Moreover, the mere fact that a particular weapon may be loaded with blank rounds does not, as practical experience tells us, establish that that weapon is incapable of firing a shot which can cause death or serious injury. This point was cogently demonstrated by the recent tragic death of actor Jon-Erik Hexum, who accidentally shot himself in the temple with a revolver loaded with a blank round. Under these circumstances, and given the absence of any tangible evidence concerning the nonlethal nature of the weapon, we conclude that Criminal Term properly refused to charge the affirmative defense.

The instant situation is somewhat analogous to that presented in People v Ames (115 AD2d 543, 545, lv denied 67 NY2d 759), where the denial of the defendant's request to charge the lesser included offense of robbery in the second degree was upheld notwithstanding evidence that although the defendant had pulled the trigger while aiming a weapon at a restaurant manager, the gun failed to fire. That failure was partially explained by the testimony of two eyewitnesses to the effect that after the trigger was pulled, they observed bullets in some but not all of the cylinders in the gun. Given this testimony and the lack of any evidence that the gun was inoperable, this court concluded that the defendant was not entitled to a charge with respect to the lesser offense. Inasmuch as the defendant in the instant case made no claim that he was carrying some clearly inoperable firearm such as a toy gun (cf., People v Smith, 55 NY2d 888), a like result should prevail here.

Assuming, arguendo, that the gun involved here contained

only blanks, the defendant's position is still an untenable one. The United States Supreme Court has ruled that an unloaded handgun is a dangerous weapon within the meaning of the Federal bank robbery statute *(McLaughlin v United States, 476 US 16, 106 S Ct 1677)*. As was recognized by the Supreme Judicial Court of Massachusetts in *Commonwealth v Carter* (396 Mass 234, 484 NE2d 1340, 1342), the use of a gun, even if unloaded, might provoke violent resistance from the intended victim or might induce other parties, such as police officers, to intervene with deadly force. Thus, the commission of an armed robbery with an unloaded gun was pronounced inherently dangerous to human life. More generally, any object which a victim perceives to have apparent ability to produce bodily harm can be considered a "dangerous weapon" for purposes of establishing an armed offense *(Paris v United States, 515 A2d 199, 204 [DC])*. The following language of the Supreme Judicial Court of Massachusetts is illustrative in the context of the instant case: "The fundamental reason for permitting a conviction for simple assault on proof of apparent ability of the assailant to accomplish the attempted or threatened battery is that the public peace and order is affected by and dependent upon what is reasonably apparent, and not upon a secret fact or reason rendering the assailant incapable of accomplishing the battery. The reason applies with even greater force to a case of apparent ability to accomplish a battery attempted or threatened by means of a firearm. The threat to the public peace and order is greater, and natural reactions thereto by the intended victim and others may be more sudden and violent than in cases where no weapon is involved. There is no reason why the rule of apparent ability should not apply to charges of aggravated assaults by means of weapons. It is sufficient to prove such a charge if the evidence shows an apparent ability to accomplish the battery by means of the particular weapon used. Thus, the mere fact that a firearm brandished by an assailant is known by him to be unloaded, or to be loaded with blank cartridges, does not entitle him to an acquittal on a charge of the aggravated offense of assault by means of a dangerous weapon" *(Commonwealth v Henson, 357 Mass 686, 693-694, 259 NE2d 769, 774)*.

More closely on point, the Supreme Court of Nevada has held that the use of a "blank gun" in the commission of a robbery was sufficient to warrant an enhanced penalty for a crime committed with the use of a deadly weapon *(Anderson v State of Nevada, 96 Nev 633, 614 P2d 540)*. The District of

Columbia Court of Appeals has likewise ruled that an imitation or blank pistol is to be considered a dangerous or deadly weapon *(Meredith v United States,* 343 A2d 317, 320 [DC]). While New York may not have gone so far, it appears from the trend of recent decisions that the affirmative defense afforded by Penal Law § 160.15 (4) is not as expansive as the defendant would have us find here. In any event, the defendant has failed to present any tangible proof whatsoever vis-à-vis the affirmative defense.

Inasmuch as (1) the defendant and his cohort displayed a seemingly operable firearm to a store clerk in an attempt to compel her to surrender the cash register receipts, (2) the victim reasonably believed that her life was being threatened, and (3) a gun loaded with blanks can clearly cause death or serious physical injury, the defendant was properly convicted of robbery in the first degree. Since the defendant presented no tangible evidence concerning the nonlethal nature of the weapon involved, a charge on the affirmative defense was not warranted. Accordingly, the judgment appealed from is affirmed. Thompson, J. P., Niehoff and Weinstein, JJ., concur.

Eiber, J., concurs in part and dissents in part and votes to modify the judgment appealed from, by vacating the defendant's conviction of robbery in the first degree and the sentence imposed thereon and ordering a new trial on that count, and affirming the judgment as so modified, with the following memorandum with which Brown, J., concurs. The issue which divides this court on appeal is whether the trial court should have instructed the jury to consider whether the defendant had interposed a viable affirmative defense to the charge of robbery in the first degree. Pursuant to Penal Law § 160.15 (4), where a defendant is prosecuted for robbery in the first degree and he is charged with having displayed what appears to be, *inter alia,* a firearm during the course of the commission of the crime, it is an affirmative defense if the firearm displayed by the defendant was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged.

During the course of the trial of this action, uncontradicted evidence was adduced to the effect that the weapon displayed by the defendant apparently contained blanks. Although two eyewitnesses testified that they had heard two gun shots fired, the police, after a thorough and detailed investigation of the robbery site, were unable to discover any spent shells nor did they uncover or ascertain any bullet holes. Moreover, although one of the eyewitnesses testified that the defendant

had aimed and fired the weapon in the direction of a pane of glass, this glass did not shatter nor was it pierced in any manner. Notwithstanding the uncontroverted proof regarding the apparent inability of the defendant's weapon to produce a shot readily capable of causing death or serious physical injury, my confreres of the majority have, nevertheless, concluded that the trial court committed no error in rejecting the defendant's request that the affirmative defense be charged and explained to the jury. I firmly disagree with this conclusion and, therefore, dissent.

The defendant in the instant case displayed a firearm, and, no doubt, induced fear in the minds of all of the victims and witnesses to the robbery. The fact that a weapon was displayed, however, is not at issue in this appeal. Our sole concern is the evidence regarding the inoperability of the weapon, for the Legislature has determined that where a defendant displays an unloaded or otherwise inoperative firearm, he is entitled to the benefit of the affirmative defense contained in Penal Law § 160.15 (4) and may succeed in reducing his liability from robbery in the first degree to robbery in the second degree (see, People v Baskerville, 60 NY2d 374; People v Williams, 61 AD2d 992).

The testimony elicited from the People's witnesses by the defense effectively established that the weapon utilized by the defendant in furtherance of the robbery contained only blank cartridges and did not fire any projectiles. Although two shots were allegedly fired, no bullets were produced, and no one was harmed in a physical sense, notwithstanding the fact that the weapon, according to the testimony of the complaining witness, was aimed and fired in his direction. Without the benefit of the requested charge regarding the affirmative defense, the jurors may have erroneously believed that the operability of the weapon and its capacity to discharge a shot capable of causing death or physical injury had no bearing upon the defendant's culpability of robbery in the first degree, when, in fact, these issues are pivotal in terms of the defendant's criminal responsibility.

The majority in this case has conceded that where there is proof concerning a weapon's inability to discharge a shot which could result in death or other serious physical injury, an affirmative defense to the crime of robbery in the first degree has been sent forth. Despite this concession and despite the existence of evidence that the weapon possessed by the defendant did not propel any material capable of causing death or physical injury, it is the majority's position that it

was not necessary to charge the jury with respect to the affirmative defense. The jury was precluded from considering this issue and the defendant was thereby deprived of the "opportunity to fight his way out of a first degree conviction", although there was reasonable and ample proof to support the affirmative defense.

The decision to sustain the trial court's refusal to charge the affirmative defense is premised, in large part, upon the majority's perception that a weapon loaded with blank rounds can cause death or serious physical injury. Indeed, my colleagues have implicitly ruled upon the functional utility of a gun containing blanks, as a matter of law. Suffice it to say that the proof adduced at bar was overwhelmingly deficient in terms of establishing the operability or lethal nature of the weapon used by the defendant. Much like a starter's pistol, which has been declared to be a weapon insufficient to sustain a conviction for robbery in the first degree (see, People v Wilcox, 53 AD2d 738, upon rearg 54 AD2d 801), a gun containing blank rounds may generate noise and may even cause a spark when fired; however, it does not generally propel or emit harmful materials, sufficient to kill or cause serious physical injury (see generally, Annotation, 81 ALR3d 1006). Notwithstanding the tragic fate of actor Jon-Erik Hexum, which was an unfortunate but legally irrelevant incident, the jury in the instant case should have been permitted to determine, as a factual matter, whether the weapon used by the defendant was capable of discharging a shot which could result in death or other serious physical injury, as the statute instructs (see, 2 CJI [NY] PL 160.15 [4]).

Finally, I find the majority's reliance upon the case of People v Ames (115 AD2d 543, lv denied 67 NY2d 759), to be factually miscast. Ames involved a situation where the gun utilized by the defendant was only partially loaded and two eyewitnesses testified that they saw bullets in some but not all of the cylinders in the gun. This testimony adequately explained the gun's failure to fire. In the instant case, however, the People's own witnesses testified that the weapon utilized in the robbery apparently contained blanks and thus, a factual question was raised concerning the weapon's ability to produce a shot readily capable of causing death or serious physical injury.

In sum, the defendant's request that the jury be provided with instructions concerning the affirmative defense to robbery in the first degree should not have been rejected, and I would, therefore, modify the judgment appealed from by re-

versing the defendant's conviction of robbery in the first degree, vacating the sentence imposed thereon, and ordering a new trial on that count. In my view, the defendant is legally entitled, based on the evidence adduced, to have a jury determine whether he established, by a preponderance of the evidence, that the weapon he possessed was nonlethal and merely contained blank rounds which were incapable of causing death or serious physical injury.