THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT KNOWLES, Appellant.

Second Department, February 17, 1981

APPEARANCES OF COUNSEL

*J. Mitchell Rosenberg* for appellant.

*John J. Santucci, District Attorney (Marc David Orloff* of counsel), for respondent.

### OPINION OF THE COURT

WEINSTEIN, J.

Section 160.10 (subd 2, par [b]) of the Penal Law provides that a person is guilty of robbery in the second degree if he forcibly steals property and if, in the course of the commission of the crime, he "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." We hold today that if a person who is in fact unarmed commits a robbery and, in the course thereof, positions his hand in his pocket in a manner that is intended to convey to his victim the impression that he is holding a firearm, that said person has committed robbery in the second degree within the meaning of the statute quoted above.

The facts herein can be briefly stated. Defendant Vincent Knowles was indicted, *inter alia*, on one count of robbery in the first degree. When he appeared before the court to

plead guilty to the reduced charge of robbery in the second degree, he admitted that on October 14, 1978, he stole United States currency, a wallet, jewelry, and two subway tokens from one Henry Laylock. Defendant further admitted that in order to persuade Laylock to surrender his property, he held his hand in his pocket in a manner which was meant to, and presumably did, convey to Laylock the impression that Knowles had a gun. In fact, however, Knowles was not armed. The trial court accepted the plea, and this court is now asked to determine whether the acts which Knowles admitted doing constitute the crime of robbery in the second degree.

We note at the outset that although the method which Knowles adopted in order to facilitate his criminal ends is by no means unique, there appear to be no cases reported in this State which address this issue.[1] Therefore, although the question was not raised at Criminal Term, and hence has not been preserved for appellate review (see *People v Warren*, 47 NY2d 740), we exercise our discretionary power to determine the issue.

Our consideration of this issue must begin, of course, with that provision of the Penal Law which sets forth how its other provisions should be construed. The provisions of the Penal Law "must be construed according to the fair import of their terms to promote justice and effect the objects of the

---

1. Arguably, the use of a toy or imitation pistol during a robbery is conceptually similar to the feigned possession of a real gun. It has been held that the use, during the commission of a robbery, of an "imitation pistol" will subject the offender to increased penalties authorized by former section 1944 of the Penal Law of 1909 (see L 1926, ch 705, as amd), for possession of a weapon during the commission of a crime (see *People ex rel. Griffin v Hunt*, 267 NY 597). However, former section 1944 brings all those weapons listed in former section 1896 of the Penal Law of 1909 within its provisions, and since former section 1896 explicitly lists a "toy pistol", *Griffin (supra)* sheds no light on the question of whether a concealed hand can be considered to appear to be a weapon within the meaning of the current Penal Law. In addition, it would seem that the actual display of an imitation pistol would fall more squarely within the meaning of the statute in question than would a concealed hand, so that *Griffin*, in any event, is of little precedential value to the instant discussion.

It was stated in *People v Smith* (85 Misc 3d 1, 3) that "[p]roof by the People that an * * * imitation pistol was utilized suffices for a second degree robbery conviction." But the latter consideration noted directly above in connection with *Griffin* can be noted again with respect to *Smith* and, furthermore, this issue was not before the court in *Smith*, so the statement must be taken as an *obiter dictum*.

law" (Penal Law, § 5.00). What is the "fair import" of the terms of the statute under consideration? The language of the statute itself refers to a person who "[d]isplays what appears to be" a firearm during the robbery. It could be argued that since Knowles actually displayed nothing, keeping his hand in his pocket at all times, his conduct could not possibly be construed to fall within the provisions of the statute. We read the statute differently, however, emphasizing the word "appears" rather than the word "displays". Thus, Knowles *did display* something—namely, his concealed hand—and the concealed hand which he displayed *did appear* to the victim to be a firearm. Accordingly, the fair import of the literal wording of the statute leads us to conclude that the acts which Knowles admitted doing constitute robbery in the second degree.

Section 5.00 of the Penal Law also bids us to "promote justice and effect the objects of the law" when construing penal statutes. However, the objects of the law under consideration are not evident from its face, and in order to ascertain those objects it is necessary to pause for a brief discussion of statutory and case law history.

Prior to the enactment of the revised, current Penal Law (L 1965, ch 1030), the only reference to weapons or firearms in the robbery statutes was in subdivision 1 of section 2124 of the former Penal Law, which defined robbery in the first degree as robbery by a person "armed with a dangerous weapon". The term "dangerous weapon" was not defined in the former Penal Law, but the court consistently held that robbery with an unloaded or inoperable gun did not constitute robbery "with a dangerous weapon", and consequently, such a robbery could be deemed to fall only within the catchall third degree robbery statute, section 2128 of the former Penal Law (see *People v Gordon*, 19 AD2d 828; *People v Dade*, 15 AD2d 629; *People v King*, 13 AD2d 997). This principle was overturned by the Court of Appeals in *People v Roden* (21 NY2d 810), which held that an unloaded gun was indeed a "dangerous weapon" for purposes of the former Penal Law.[2] However, the *Roden*

---

2. This holding may have been prompted by section 1896 of the former Penal Law (see n 1, *supra*).

decision became academic, because even before it was decided, the Legislature had enacted the current Penal Law, giving the old rule as to unloaded or inoperable guns a statutory basis. Specifically, the only mention of firearms in the current Penal Law, as originally enacted, was subdivision 2 of section 160.15, declaring a person guilty of robbery in the first degree if he is "armed with a deadly weapon" during the robbery. The term "deadly weapon" was originally defined, insofar as is relevant here, as "any loaded weapon from which a shot may be discharged by gunpowder", in what is now subdivision 12 of section 10.00 of the revised Penal Law (L 1965, ch 1030). This definition was amended two years later to read: "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" (L 1967, ch 791, § 1). Clearly then, as of 1967, robbery with an unloaded or inoperable gun still was not first degree robbery but, rather, remained punishable only under the catchall third degree robbery statute (Penal Law, § 160.05).

Subsequently, in response to the increased use of firearms during the commission of robberies and burglaries, and in order to increase the penalties for the use of both unloaded or inoperable guns and of guns which the prosecution could not prove to be loaded and operable during the commission of these crimes (see Governor's Memorandum, NY Legis Ann, 1969, p 567), the Legislature added two provisions dealing with firearms to the robbery statutes (L 1969, ch 1012, §§ 3, 4). One of these provisions, the current subdivision 4 of section 160.15 of the Penal Law, in effect created a presumption that a firearm displayed during a robbery was a deadly weapon, and hence made the crime punishable as first degree robbery. The same subdivision placed the burden on the defendant to prove, as an affirmative defense, that the firearm was not a deadly weapon, as defined in the Penal Law;[3] but it also provided that a

---

3. One trial court, relying on *Mullaney v Wilbur* (421 US 684), has held this provision to be unconstitutional, in that it requires a defendant to disprove an element of an offense instead of requiring the prosecution to prove it (see *People v Smith*, 85 Misc 2d 1). However, that holding has been consistently rejected by the appellate courts (see *People v Cwikla*, 54 AD2d 80; *People v Felder*, 39 AD2d 373, affd 32 NY2d 747, app dsmd *sub nom. Felder v New*

defendant who established this defense could still be liable for second degree robbery, not merely third degree robbery as in the past. The other provision enacted by the Legislature in 1969 included the clause under consideration herein, section 160.10 (subd 2, par [b]) of the Penal Law, which provided that the display during a robbery of what appeared to be a firearm, including inoperable and unloaded guns, would raise the robbery to the second degree.

The upshot of all this was that robbery with an unloaded or inoperable gun was raised from third to second degree robbery. It is now well established that robbery with an unloaded or inoperable gun is robbery in the second degree (see *People v Iglesias*, 40 AD2d 778; *People v Santucci*, 48 AD2d 909; *People v Castaldo*, 72 AD2d 568).

Reverting now to the issue before the court, we may infer that the primary "objects of the law" (namely, the objects of section 160.10 [subd 2, par (b)] of the Penal Law) were to provide a middle level of severity for robbery with an unloaded or inoperable firearm, less than for robbery with a loaded, operable firearm, but greater than for a completely unarmed robbery. Evidently, the Legislature was of the view that a robber's inducing the victim to believe that the robber is armed, *even though the robber may in fact be unable to shoot the victim with the firearm*, was an aggravating circumstance sufficient to raise the degree of the robbery above the lowest degree, albeit not to the highest. We perceive no distinction between an instance where this belief is induced by a plainly displayed, though inoperable, gun, and an instance where this belief is induced by a concealed hand which a frightened victim understandably believes to be a gun. Both are harmless; but both are terrifying. Accordingly, Vincent Knowles' actions are included within the scope of the second degree robbery statute.

A review of cases decided by sister States regarding this issue is enlightening. In *State v Young* (134 W Va 771) the defendant approached a woman sitting at her desk in

York, 414 US 948; *People v Kapp*, 55 AD2d 779; cf. *People v Patterson*, 39 NY2d 288, affd *sub nom. Patterson v New York*, 432 US 197; *People v Donovan*, 53 AD2d 27).

her office. The defendant placed his hand in his hip pocket, giving the impression that he had a gun, and ordered her to move away from the desk. Believing the defendant to be armed, the victim obeyed and allowed the defendant to take more than $800 from the desk. The defendant, in fact, was unarmed. Nevertheless, the court held him liable under the armed robbery provisions of the West Virginia Code.

In *State v Elam* (312 So 2d 318 [La]) the defendants confronted a store manager and threatened to shoot him if he did not relinquish to them the contents of his safe. The manager obliged the defendants. One of the defendants kept one of his hands inside his jacket pocket at all times, and gestured with the hand in a way which indicated that he had a weapon in his pocket. Even though the victim at no time actually saw a gun, and none was recovered by the police, the court affirmed the conviction of armed robbery.

A Michigan court upheld a conviction for armed robbery where a defendant, with his hand in a paper bag, approached a gasoline attendant, pointed the bag at the attendant, announced a robbery, and took $550, even though there was no proof as to the actual existence of a gun (see *People v Washington*, 4 Mich App 453).

Similarly, the court in *Commonwealth ex rel. Johnson v Myers* (200 Pa Super Ct 177) held that where the defendant holds his hand in his pocket so that it appears that he has a gun, threatens to shoot, and takes his victim's money, a conviction under an armed robbery statute should be affirmed notwithstanding the District Attorney's stipulation that no weapon was used during the robbery.

In Ohio, when a robber covers his hand with a cloth and tells his victim that he has a gun, he may be convicted of armed robbery even if the victim never sees a gun (see *State v Sherman*, 44 Ohio App 2d 45).

Dealing with a related issue, some courts have held that where a defendant actually *is* armed, but keeps the weapon in his pocket all during the robbery so that the victim never sees it, a conviction for armed robbery is proper (see *People v McKinney*, 111 Cal App 2d 690; *People v Ash*, 88 Cal App 2d 819, 830; cf. *Peck v Commonwealth*, 286 Ky 347).

We note that all of the cases cited above have dealt with statutes proscribing actual armed robbery. It would appear that under facts similar to those at bar, these courts would approve of a conviction of *first degree* robbery under the New York statutes; it follows a fortiori that they would affirm Knowles' second degree robbery conviction. But certain courts have also reached the same conclusion as we have in construing a statute, such as New York's second degree robbery statute, where it is the subjective perception of the victim, rather than the objective presence or absence of a gun, which determines whether the robbery is aggravated. In Delaware, a person is guilty of first degree robbery if, during the robbery, he "[d]isplays what appears to be a deadly weapon" (Del Code Ann, tit 11, § 832, subd [a], par [2]). In construing this statute, which is virtually identical to this State's, the court held that it is violated when a participant in a robbery places his hand in his jacket pocket and points it towards one of the victims so as to make it appear that he has a gun, even when no gun is either seen or recovered (see *State v Smallwood*, 346 A2d 164 [Del]).

A Michigan statute punishes as armed robbery a robbery where the perpetrator is armed with "any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon" (Mich Compiled Laws Ann, § 750.529). A conviction under this statute must be upheld where an unarmed robber's hand is covered during the robbery, but positioned so as to indicate that it has a gun (see *People v Jury*, 3 Mich App 427).

We conclude, therefore, that the clear majority of American States that have considered the question that is now before this court has held that the use of an unarmed robber's hand in such a way as to convey the impression that the robber is armed will bring the robbery within statutes proscribing actual armed robbery, to say nothing of statutes dealing with use of what appears to be a weapon. We recognize that at least one, and perhaps two, States have declined to adopt this position. A robbery perpetrated in this manner is not armed robbery in North Carolina (see *State v Keller*, 214 NC 447). In Missouri, such a robbery satis-

fies a statute dealing with robbery by placing the victim in fear of immediate injury to his person, but it would appear not to come within the armed robbery statute (see *State v Scarlett*, 291 SW2d 138 [Mo]; cf. *State v DeLuca*, 448 SW2d 869 [Mo]). However, the North Carolina and Missouri statutes involved refer to actual armed robbery, not to robbery where the perpetrator displays what appears to be a gun.[4]

We have considered the "fair import" of the New York statute under consideration, as well as the "objects of the law". We have polled our sister States in order to determine how they would resolve this issue. All our efforts have led us to the same conclusion: that where an unarmed robber holds his hand in his pocket so as to give the impression that he is holding a gun, he has "[d]isplay[ed] what appears to be a * * * firearm" within the meaning of our second degree robbery statute. Consequently, Vincent Knowles' conviction should be affirmed.

DAMIANI, J. P., O'CONNOR and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered May 31, 1979, affirmed.

---

4. The Supreme Court of Indiana lost an opportunity to decide this issue as a matter of law when, under similar facts, the jury in *Cross v State* (235 Ind 611) found the defendant not guilty of armed robbery as a matter of fact, although he was guilty of "robbery by putting in fear."