OPINION OF THE COURT
Meyer, J.
 A robber who holds and uses a black object covered by a towel in such manner as to give his victims the impression that he is threatening them with a gun “[displays what appears to be a * * * firearm” within the meaning of subdivision 4 of section 160.15 of the Penal Law, and an instruction to the jury to that effect is not erroneous. It is error, however, in a case in which the jury could conclude from the explanation offered by defendant for his possession of part of the proceeds of a recent robbery, that he was one of the robbers, that he was simply a possessor of stolen property or that he was guilty of neither crime, to charge only that the jury could, if it found defendant’s explanation false, infer that he was “the criminal.” The recent possession charge must be related to the facts of the particular case. There should, therefore, be a reversal and a new trial.
I
On the morning of Saturday, April 11, 1981, the base exchange at the United States Air Force Base in Plattsburgh was robbed. The robber took nearly $30,000 from the cashier’s safe, which he stuffed into a plastic bag taken from a trash can near the cashier’s cage. None of the five witnesses to the robbery who testified at defendants trial could identify the robber, who wore a hooded sweatshirt and used a towel to conceal the lower half of his face. Another towel was wrapped around the robber’s arm, but one of the witnesses testified that she saw a black object inside the towel, which she thought was a gun. Another witness testified that when a woman approached the cashier’s window in the exchange office, the robber raised his towel-wrapped arm, pointed it at the woman and threatened to kill her.
*379 Within half an hour after the robbery, defendant, an airman at the base, remarked to an acquaintance that the base exchange had been robbed. Less than three hours later, defendant paid a Plattsburgh car dealer almost $6,000 in cash as a down payment on a new car, using money which was still bundled in wrappers that were dated, initiated and stamped with an official seal of the base exchange, and during that weekend spent close to an additional $2,000 on other purchases.
Defendant was arrested the following Monday morning and his locker and dormitory room were searched pursuant to a military warrant. The search turned up an additional $1,100 in defendant’s locker and in defendant’s room a plastic bag of the type used to carry away the money as well as clothing which matched that described by the witnesses to the robbery, including sneakers with a green stripe. Expert testimony was presented at the trial that the design and wear characteristics of one of defendant’s sneakers closely conformed to those of a footprint found in a sandy area adjacent to the exchange shortly after the robbery and that the plastic bag in defendant’s room was of the identical formula and manufacturer used by the exchange.
Questioned by investigators after his arrest about the down payment on the car, defendant first said the money had been obtained from the settlement of an accident claim. When confronted with the exchange money wrappers, however, defendant related an entirely different story, which became the theory of his defense at trial. He had, he said, borrowed $5,540 in cash from a loanshark who delivered the money to him behind the gas station on the base during the late morning of the robbery. Although such a loan was consistent with evidence introduced at trial that during the two days preceding the robbery defendant had sought to obtain money from various financial institutions and charities in the Plattsburgh area by stating that he needed the money to ransom his niece, who had purportedly been abducted, he conceded at trial that he had concocted that story in order to obtain money for the down payment on the car.
*380 The Trial Judge charged, over objection, that defendant could not be convicted of robbery in the first degree unless the jury found that he had displayed what appeared to be a firearm but that “It is sufficient * * * if the victim is made to believe the object to be such a weapon or if the defendant holds or wraps the object in such a way as to create the impression that he is holding a pistol, revolver or other firearm.” He also charged, again over objection, that there is “a rule of law in this State pertaining to larcenies” which the jury could apply which was “that the recent exclusive possession of fruits of a crime if unexplained or falsely explained, will justify the inference that the possessor is. the criminal.”
The jury found defendant guilty of both robbery in the first degree and criminal possession of stolen property in the first degree. The Appellate Division affirmed in a memorandum. On appeal to our court defendant raises numerous issues, but only those relating to the instructions to the jury warrant discussion. As to those, we agree that the charge as to the display of what appears to be a firearm was proper, but conclude that the recent possession charge as given was erroneous..
II
Both subdivision 4 of section 160.15 of the Penal Law, defining robbery in the first degree, and section 160.10 (subd 2, par [b]) of the Penal Law, defining robbery in the second degree, require that in the course of forcibly stealing property the perpetrator “[displays what appears to be a pistol, revolver * * * or other firearm”. As to the first degree offense, it is, however, an affirmative defense that the object displayed was not an operable firearm and if defendant so proves by a preponderance of the evidence he may only be convicted of robbery in the second degree (Penal Law, § 25.00, subd 2; § 160.15, subd 4; see People v Lockwood, 52 NY2d 790; People v Felder, 32 NY2d 747, affg 39 AD2d 373, app dsmd 414 US 948).
In either case, the Legislature has denominated the display of “what appears to be” a firearm an aggravating factor which increases the degree of the crime over forcible stealing without such a display (Penal Law, § 160.05). The *381 apparent justification for differentiating the situations is the difficulty of proving when no shot was fired that what appeared to be a weapon was in fact a weapon (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 160.15, p 205) and the effect upon the victim put in fear of his or her life by the display of what appeared to be a weapon. Bearing in mind that provisions of the Penal Law are to be “construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law, § 5.00) and the Legislature’s purpose in increasing the penalty for displaying what appears to be a firearm, we conclude that display of anything that appears to be such, though held inside a coat or otherwise obscured, is covered by sections 160.10 and 160.15.
This does not mean that the test is primarily subjective. The defendant must consciously display something that could reasonably be perceived as a firearm with the intent of compelling an owner of property to deliver it up or for the purpose of preventing or overcoming resistance to the taking (Penal Law, § 160.00; see People v Chessman, 75 AD2d 187, 193-194, app dsmd 54 NY2d 1016). Furthermore, the display must actually be witnessed in some manner by the victim, i.e., it must appear to the victim by sight, touch or sound that he is threatened by a firearm (see People v Jenkins, 118 Misc 2d 530). When both of these requirements are satisfied, however, the true nature of the object displayed is, as concerns criminality, irrelevant. Thus, in People v Lockwood (52 NY2d 790, 791-792, supra), we recognized that even if defendant’s statement that he committed the robbery by holding a toothbrush in his coat pocket to simulate a gun were accepted as true, he could still be guilty of displaying what appears to be a firearm, and would succeed only in reducing his liability from first degree robbery to second degree.
The evidence in the present case that the towel wrapped around the robber’s arm concealed a black object that appeared to one of the persons threatened to be a gun, and that the robber raised his arm toward a person and threatened to kill the person his arm was pointed at, was clearly sufficient to establish that the robber displayed what ap *382 peared to be a firearm. Nor was there any error in the trial court’s charge that the statutory requirement had been satisfied if the object displayed was held or wrapped in such a way as to create the impression that it was a gun.
Ill
The recent possession charge given by the Trial Judge is a quotation from People v Galbo (218 NY 283, 290) and is, as Justice Francis Bergan (as he then was) put it in Stryzinski v Arnold (285 App Div 780, 783), “a good illustration of the problem of words taken out of decisional context to frame a request which in turn would throw out of focus the instructions designed to guide the jury.” The rule that an inference of guilt may be drawn from recent and exclusive possession of the fruits of a crime is an ancient one (see Barnes v United States, 412 US 837, 843-844), long recognized in this State (Knickerbocker v People, 43 NY 177). Under it evidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt (People v Sim, 44 NY2d 758, affg 53 AD2d 992; Knickerbocker v People, supra; Barnes v United States, 412 US, supra, at pp 845-846).
But the words charged to the jury in the present case — “that the possessor is the criminal” — do no more, as Judge Cardozo noted in Galbo (218 NY, supra, at pp 290-291), than fix “the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that if nothing more is shown, we may take him to be the thief [citation omitted]. But as soon as evidence is offered that the theft was committed by someone else, the inference changes, and he becomes a receiver of stolen goods”.
Thus, the charge to the jury must be tailored to the facts of the particular case. If a defendant is found in exclusive possession soon after the crime and there is no evidence indicating that he may have received the stolen property from someone else, the only inference that can be drawn is that defendant is the thief. In such a case the charge here *383 given would not be error (see People v Howard, 60 NY2d 999; People v Everett, 10 NY2d 500, 508-510, cert den 370 US 963), though even in such a case the Trial Judge retains discretion not to invoke the common-law inference, lest undue emphasis be given to a point within the common sense and experience of the average juror (see Barnes v United States, 412 US, supra, at p 845, n 8).
At the other end of the spectrum are theft cases in which possession is so far removed in time from the taking or the evidence of shared rather than exclusive possession so strong that no inference instruction would be proper (People v Schillaci, 68 AD2d 124; see People v Mobley, 33 AD2d 888). Between those two extremes fall cases such as the present in which there is evidence from which the jury could conclude that defendant was the thief, but there is also a reasonable view of the evidence under which the jury could find that defendant acquired possession after the theft. In such a case the jury must be charged that if they find that defendant had possession of recently stolen property for the possession of which he has offered no explanation or an explanation which they find to be untrue, they may, although they are not required to, infer that defendant was guilty of a crime and must then weigh the evidence before them to determine whether it establishes beyond a reasonable doubt that the defendant participated in the theft of the property or received it after it was stolen with knowledge of that fact (see People v Batten, 31 NY2d 737, affg 40 AD2d 549, 550; People v Dobbins, 92 AD2d 593, 594; People v Zada, 75 AD2d 77).
Here defendant offered as his explanation for possession of part of the robbery proceeds the loan of the money to him by the alleged loanshark. In light of his knowledge of the robbery within less than half an hour after it occurred, the clothing and other items found in his room that matched what the robber had worn and used, and the admittedly false story first told to the investigator, that explanation was not strong enough to render the People’s evidence insufficient (cf. People v Volpe, 20 NY2d 9, 13). Moreover, in view of defendant’s knowledge of the robbery before the alleged loan transaction and the markings on the wrappers in which the money was contained when he paid it over to *384 the car dealer, the jury could reasonably conclude that defendant was aware that he possessed stolen money even if he did not steal it (see People v Batten, 31 NY2d 737, supra; People v Zada, 75 AD2d 77, supra). It was not, therefore, a case such as People v Everett (10 NY2d 500, 510, supra) in which the jury was compelled to choose between convicting defendant of participation in the robbery and acquittal.
Nevertheless, defendant was entitled to have his position submitted to the jury under proper instructions in light of all the evidence. To charge only that from unexplained or falsely explained possession of part of the robbery proceeds the jury could infer that defendant was the criminal without explaining to them further that defendant, if guilty at all, could be found guilty of either robbery or possession of stolen property was reversible error.
The order of the Appellate Division should, therefore, be reversed and a new trial ordered.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Order reversed, etc.