■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BEVERLY JOB, Appellant. [630 NYS2d 285] —Judgment, Supreme Court, New York County (Felice Shea, J.), rendered August 3, 1992, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing her, as a second felony offender, to a term of 5$^{1}$/$_{2}$ to 11 years, affirmed.

Defendant's claims relating to the trial court's closing of the courtroom during the testimony of the undercover police of-

ficer are unpreserved for appellate review, as a matter of law, since she did not object to the court's decision to close the courtroom (*People v Carter*, 162 AD2d 218, 219, *lv denied* 76 NY2d 984), and we decline to review them in the interest of justice. Were we to review the claims, we would find them to be without merit (*People v Miller*, 190 AD2d 609, *lv denied* 81 NY2d 974).

Defendant and the dissent argue that the trial court's instruction that an agent acts solely on the buyer's behalf was error because it precluded the jury from considering the agency defense even if defendant had only an incidental interest in the transaction. Relying on *People v Andujas* (79 NY2d 113), defendant and the dissent assert that the court should have expanded its charge on agency by instructing the jury that a person who acts in part to satisfy her own drug habit, as well as to accommodate the buyer's apparent desire for drugs, must still be considered an agent since that person is acting in the buyer's role, rather than that of a seller. However, in contrast to *Andujas*, there was no testimony demonstrating that defendant acted as a buyer in her own right. In fact, defendant's testimony that she stole two vials from the detective, if accepted, indicated that she acted as a middleman profiting from the sale, acting "largely for [her] own benefit" (*People v Argibay*, 45 NY2d 45, 53, *cert denied sub nom. Hahn-DiGuiseppe v New York*, 439 US 930). Thus, the trial court properly refused the request for an expanded charge. In any event, the court charged the jury that a benefit received from the buyer would support an agency defense. Thus, defendant's unpreserved claim that the court's reinstruction of the law of agency was improper is without merit. Concur—Murphy, P. J., Sullivan, Kupferman and Asch, JJ.

Mazzarelli, J., dissents in a memorandum as follows: I respectfully dissent. I would reverse the judgment of conviction and remand for a new trial because the trial court's denial of defense counsel's request to tailor the standard CJI charge on the agency defense to fit the particular facts and circumstances of this case denied defendant a fair trial.

## I

On the People's direct case, the undercover police detective testified to a factual scenario common in "buy and bust" narcotics prosecutions. He stated that upon exiting his unmarked police car, he walked one block to 2921 Tilden Avenue, Brooklyn, a known drug location, where he saw defendant, Beverly Job, standing in the courtyard outside the build-

ing. According to the detective, he approached defendant, whom he had never seen before, and "asked her if she had anything." Defendant asked the detective what he wanted. After the detective said he wanted "two dimes," defendant told him to stay outside, while she went inside the building. While Job was gone, the detective transmitted a description of defendant over his Kel transmitting device to his supervisor. About one minute later, defendant exited the building, handed him two clear plastic bags containing two black-capped vials of crack-cocaine, and was paid twenty dollars with two prerecorded ten dollar bills. The detective left the "set", and transmitted a description of defendant and her location.

According to Detective Joseph Barbato, one of the backup officers, he received a radio transmission from the undercover detective's supervisor and went to the scene. When defendant could not be found outside the building, Detective Barbato went to the second floor, where he saw Ms. Job standing on a landing with two men. Barbato approached defendant and she dropped a vial of what appeared to be crack to the floor.[1] Defendant was then arrested and searched, but Barbato did not find either cocaine or the prerecorded buy money. Later, at the stationhouse, the undercover detective made a confirmatory identification.

When defendant Beverly Job testified, she presented a version of her encounter with the undercover detective that significantly contradicted that of the People's witnesses.[2] She testified that he stopped her on the street at about 1:30 A.M. as she was heading into the neighborhood shooting gallery and crack den. Specifically, Ms. Job was headed to the third floor apartment/crack den of her friend Yvette. According to Ms. Job, the undercover detective asked her if she was "going to cop" some drugs and when she responded affirmatively, he inquired if "they" (the drug dealers in the building) were working, to which she responded, "I don't know."

The detective then asked Job whether she would "cop something for [him]" and whether she "want[ed] to hang out" with him. He told Job that he did not know where to make the purchase and that the sellers would not sell to him. Job believed the detective and decided to help him because "he is a white boy, and white boys always carry big money."

Job also agreed to make the purchase for the detective

---

1. It was later determined that the vial did not contain narcotics.

2. Indeed, on several occasions during cross-examination, the prosecution improperly, but without objection, asked defendant to characterize the officer as a liar or his testimony as lies.

because, although he did not explicitly offer her a tip, he "offered to get [her] high" and she believed "he [was] going to give [her] some" drugs. Defendant further testified that while she did not contribute money toward the purchase price, she understood, based on her experience, that a man who stops you and "offer[s] you something for nothing" expects sex in return for sharing his drugs. By way of example, Job explained that at the beginning of the month, a woman could go to Yvette's apartment and meet up with a man who would use his Veteran's benefits or Social Security check to buy drugs and "get you high" in exchange for "tricking."

When Ms. Job went inside the building and initially attempted to make the purchase, she was turned away by the sellers, who had exhausted their inventory of crack and "had to re-up." Job then went outside to consult with the detective, and she offered to take him to an alternative location down the block to buy the drugs. The undercover detective declined, insisting that the crack from this building "tastes better." As "he had all this money and [she] wanted to get high," Job decided to stay with him and went back inside five minutes later. She purchased four five dollar vials, because, notwithstanding that the detective had given her twenty dollars to purchase "two dimes," the dealers were only selling "nickels." Job testified on cross-examination that she did not know the person who sold her the drugs.

Without informing the undercover detective that she had purchased four nickels instead of two dimes, Job gave him two nickels, which he believed to be dimes, and kept two vials for herself. The undercover detective asked Job the location of "places where you can go to smoke," but then said to her "check you later", and left because he had just seen his buddy. Having kept some crack for herself, Job did not protest, and went back inside the building, up to the third or fourth floor, to make a "rollie" or "rula" (a cigarette with crushed up crack, marijuana and tobacco) and to get high.

On the way, Job also purchased a "trey" (three dollar vial) with a pink cap to smoke in Yvette's house or to "give [as] a house piece" or contribution. She was about to open it and make another crack-laced cigarette when the police arrested her, but not before she had been able to figure out that the pink-capped vial contained "beat" drugs (no controlled substance). Upon Ms. Job's arrest, the police recovered one vial of a noncontrolled substance and did not find any prerecorded buy money. Ms. Job admitted her 1987 and 1989 convictions for sale of a controlled substance to an undercover police officer.

## II

At the initial charge conference, the prosecutor argued that, based on the evidence, the agency defense should not even be submitted to the jury because defendant "was never acting on behalf of the buyer and the buyer alone." The defense not only requested that the court instruct the jury about the agency defense, but, relying on *People v Andujas* (79 NY2d 113), that the language used in the standard CJI charge be modified to accommodate the facts of this case.

Defense counsel argued that the CJI charge, as drafted, precluded consideration of the agency defense when the defendant received a benefit, in whole or in part. He noted that the thrust of the Court of Appeals decision in *Andujas* was that one could still be acting as an extension of the buyer notwithstanding that he or she received a benefit. Counsel pointed out that the evidence in this case, when viewed in the light most favorable to defendant, supported a conclusion that Ms. Job expected to barter sex for drugs with the undercover, was not "selling for herself," did not have any established relationship with the seller, and was an agent of the buyer.

The court granted defendant's request to charge the agency defense, but, finding *Andujas* (*supra*) inapplicable to the case at bar, refused to modify the CJI language. In explaining its ruling, the court stated, *inter alia*, that a modification of the standard charge was unnecessary because "there will [not] be any confusion as to whether she is acting in one part of the proof on her own behalf and on one part of the proof on [behalf of] the buyer or seller."

On summation, the prosecutor used hypothetical examples comparing defendant to a clerk in catalogue store or to a counter person at a hot dog stand to demonstrate why Ms. Job was not an agent of the undercover police officer. The prosecutor also made several statements about the law of agency, including the following:

"First of all, the judge will also charge you as a matter of law that by the defendant saying she is an agent, she is saying that she did not have the intent to sell to the undercover, that her intent was otherwise, but not to sell, and that as a matter of law you may consider the fact that she has two prior convictions on the question of her intent to sell. * * *

"Now, the judge will instruct you on the law of agency, and I am not going to go into that except briefly to say that *the law will indicate* to you that *you must find* that the *defendant acted solely for the benefit of the buyer, in this case the*

*undercover police officer, for you to find that she is an agent, solely; she operated only for his benefit.*

"[Defense Counsel]: Objection.

"THE COURT: I am going to instruct you on the law, ladies and gentlemen.

"Please don't tell the jury at this point what the law is.

"[Prosecutor]: I submit to you, ladies and gentlemen, it's very clear in this case that that's not what was going on. The defendant was operating for herself alone, the whole time." (Emphasis added.)

After the prosecutor's summation, and before the court delivered its final instructions to the jury, defense counsel renewed his request to the Trial Judge to modify the language in the CJI charge. He again pointed out the inadequacy of the model charge in light of defendant's testimony, and made specific reference to the Assistant District Attorney's statements on summation suggesting that the agency defense was precluded because Ms. Job "had something in it for herself." Defense counsel reiterated,

"And I think the key language we discussed before, *Carlos Andujas*, where they say, quite clearly and explicitly: The fact that the agent also has his or her own interest does not preclude the agency defense. And, in fact, the current language in the standard charge[, ...] 'solely' and [']only['] is confusing and prejudicial.

"I think, despite the fact the distinction was drawn in that case the defendant actually threw in some of his own money and in this case, clearly that is not the case, I think that is a very small distinction, given the great similarities in these cases and the great similarities in the People's theories. And this is the Court of Appeals: They made it explicit. * * *

"When there is a third interest that is consistent with the agent and not the seller, that has got to be addressed, and the current charge does not accommodate that. * * *

"This case says you can act for yourself as a buyer and act for someone else as agent * * * [d]uring the same transaction. That's exactly what this case says."

The prosecutor again opposed the modification of the CJI charge, distinguishing *Andujas* (*supra*) on the factual difference that Ms. Job, unlike Mr. Andujas, had not contributed any money to the pool of funds used to purchase the cocaine. The court adhered to its earlier ruling and delivered the standard CJI charge. At the conclusion of the charge, defense counsel noted his earlier objections.

During deliberations, the jury sent a note requesting reinstruction on the elements of criminal sale of a controlled substance and the law of agency. In its note, the jury explicitly asked the court to reread the "law of agency, especially [the] part where [the] agent acts only, solely" on behalf of the buyer. The court again delivered the standard CJI agency charge in its entirety.

## III

At the conclusion of a jury trial, the court has the duty to "state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts" (CPL 300.10 [2]). In fulfilling this statutory duty, the court must tailor its charge, when necessary, to reflect the particular facts and circumstances of the case (*People v Baskerville*, 60 NY2d 374, 382). The court's refusal to so tailor the agency charge here denied defendant a fair trial, and her conviction should therefore be reversed and the matter remanded for further proceedings.

The decisions of the Court of Appeals explicating the agency defense draw a distinction among the different participants in a drug transaction by interpreting the provisions of the Penal Law that proscribe narcotics sales as being "aimed at drug sellers, not those who purchase drugs or possess them illegally" (*People v Andujas, supra*, at 117, and cases cited therein). Thus, while "the laws prohibiting narcotics sales encompass the actions of a 'middleman,' who acts as a broker between the seller and the buyer * * * and whose role in the transaction may go no farther than that of a deliverer of narcotics" (*People v Starling*, 85 NY2d 509, 515), the agency "defense simply reflects the logical proposition that if a defendant is acting solely in a capacity which is inherently inconsistent with being a seller—i.e., acting as an agent for the buyer—[s]he cannot be a seller" (*People v Andujas, supra*, at 118). In *Andujas*, the Court of Appeals found this reasoning equally compelling where a person acts both as buyer in his or her own right and as an agent to buy for another. The Court explained,

"This same reasoning applies no less when a defendant instead of acting only to buy drugs for someone else acts only to buy them for himself, or when he acts both as a buyer in his own right and as agent to buy for another. Proof that a defendant is acting solely in one or the other or both of these capacities may, if believed, be proof that he is not a seller. * * *

"We do not accept the People's argument, based on a piecemeal analysis of the charge, that the charge was adequate

because it did not expressly instruct the jury to reject the defense if defendant purchased part of the drugs for himself. It is settled that in considering the adequacy of a jury charge, an appellate court should read it as a whole against the background of the evidence produced at the trial (*see, People v Crumble*, 286 NY 24, 26). When so read, we agree with defendant that the charge effectively ruled out the agency defense when a defendant acts in a dual capacity as purchaser for himself and agent for another purchaser." (*Supra*, at 118.)

In contrasting the facts of this case with those of *Andujas*, (*supra*) the majority observes that "there was no testimony demonstrating that defendant acted as a buyer in her own right". If the majority simply means, as the prosecution argued to the trial court, that defendant did not contribute cash funds toward the twenty dollar purchase price for the buy she made on behalf of the undercover officer, this is an accurate description of her testimony. However, in my view, Ms. Job's testimony made clear that she did not expect "something for nothing," but rather that she expected to "contribute" to the buy the last remaining asset she had, her body.

Just as the Court of Appeals, "[i]n recognition of the reality that the exchange of money and drugs may take place at different times and places" (*People v Starling, supra,* at 515), has interpreted the statutory definition of "sell" to mean that a "defendant may be guilty as a seller even if he does not receive any consideration for the transfer of drugs to the buyer" (*People v Herring*, 83 NY2d 780, 782), so too we must recognize the reality of the drug trade and the lives of the drug addicted when interpreting the term "buy" and "buyer" for purposes of the agency defense. As Ms. Job's testimony made clear, a person who is unable to make a cash contribution toward a drug purchase, particularly a drug-addicted woman, may "contribute" or otherwise "buy" drugs with noncash assets, namely, by bartering sex for drugs.

Although the majority states that defendant's own testimony, if credited, indicates "that she acted as a middleman profiting from the sale, acting 'largely for [her] own benefit' ", her testimony could also support a finding that she was acting "in a dual capacity as purchaser for [her]self and agent for another purchaser", i.e., the undercover (*People v Andujas, supra,* at 118). The point of the defense both at trial and on appeal is that the agency defense as explained by the trial court, and as argued by the prosecutor in her summation, did not permit the jury to consider this latter alternative.

While it would be simpler for the trial courts if the fact pat-

terns of drug sales always fell neatly into accord with the dichotomy set forth in the pattern CJI agency charge of defendants acting either only for the seller or only for the buyer, the *Andujas* Court recognized that there will be cases where this is not so. The thrust of *Andujas* is that in such cases, the standard charge must be tailored to fit the circumstances.

*Andujas* (*supra*) should not be read as an anomaly restricted to its particular facts. Here, as in *Andujas*, the trial court's instruction on the agency defense was the standard charge approved by the Committee on Criminal Jury Instructions (3 CJI[NY] PL art 220, at 1750), and it effectively precluded the jury from considering the issue at the heart of the agency defense, that is, whether defendant acted "solely in a capacity which is inherently inconsistent with being a seller" (*People v Andujas, supra*, at 118). The majority's observation that "[i]n any event, the court charged the jury that a benefit received from the buyer would support an agency defense" is the kind of "piecemeal analysis of the charge" that the Court of Appeals rejected in *Andujas* (*supra*, at 118).

The note sent out by the jury during deliberations made clear that it had focused on the agency charge, specifically that portion where the court told the jury that an agent must act "solely" and "only" for another buyer. As delivered, the charge did not convey to the jury that it could accept the agency defense even if it found that defendant had acted in a dual capacity as buyer for herself and agent for the undercover officer. Because a view, albeit not the only view, of defendant's testimony would have supported such a finding, the court should have granted defendant's request for a modification of the CJI charge. Therefore, I would reverse the judgment of conviction and remand for a new trial.