Charles AARON, Petitioner,

v.

Walter R. KELLY, Respondent.

No. 98 Civ. 0538(LMM).

United States District Court,
S.D. New York.

Sept. 15, 1999.

Charles Aaron, Attica, NY, pro se.

Marisa Longo, Asst. Atty. General, New York State Dept. of Law, New York City, for Respondent.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

By Report and Recommendation dated August 6, 1999 (the "Report"), Magistrate Judge Grubin recommended that the above petition for a writ of habeas corpus be denied. No timely objections having been filed, and upon consideration of the Report, this Court accepts the recommendation of the Magistrate Judge.

The petition is dismissed.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE LAWRENCE M. McKENNA

GRUBIN, United States Magistrate Judge.

Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment rendered on October 21, 1993 in the New York State Supreme Court, New York County, convicting him upon a jury verdict of robbery in the second degree, N.Y.Penal Law § 160.10(2)(b), and burglary in the second degree, N.Y.Penal Law § 140.25. After review of the trial record, I recommend that the petition be denied.

## BACKGROUND

Viewing the facts in a light favorable to the state as we must, *see, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996); *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988), the evidence at trial established that on February 9, 1993, shortly after 6:00 P.M., petitioner approached Jonas Shantz, a student at Columbia University, and asked for his help in visiting petitioner's sister in Mr. Shantz's dormitory. In order for a non-resident to enter the dormitory, he or she had to provide identification and be signed in by a resident. Mr. Shantz agreed to help petitioner, and they entered the dormitory where petitioner gave a photo identification card to the security guard and Mr. Shantz signed for him. Petitioner then took the elevator to the seventh floor where he entered the empty room of another student, Roslyn Nash, and took her Walkman. As he was leaving the room he encountered Ms. Nash and another student, Charisse Charley. When Ms. Nash asked what petitioner was doing in her room, he said that he was looking for his friend Beverly in room 630. Ms. Nash told him that room 630 was on the sixth floor. When petitioner left, Ms. Nash and Ms. Charley went down to the main floor to alert security because Ms. Nash knew that a friend named Ronald lived in room 630.

Shortly thereafter, David Kim, a student who lived on the fourth floor, entered his room and found petitioner rifling through his desk drawer. When Mr. Kim went to his desk and discovered $24 was missing, he demanded that petitioner return the money. Petitioner at first denied taking any money, but then gave back $14. When Mr. Kim demanded the rest of the money, petitioner forced his way out of the room and started down the stairs. Mr. Kim followed, calling for help. Petitioner put his hand in his pocket and, in a "threatening manner," told Mr. Kim to be quiet. Mr. Kim was "scared to death," thinking petitioner had a gun in his pocket. He stopped calling for help, but continued down the stairs.

When petitioner reached the bottom floor he headed out the door, without picking up his identification at the front desk, still followed by Mr. Kim. Mr. Kim called out to petitioner that he should stop and that he had stolen his money, but petitioner continued on. Mr. Kim, joined by Ms. Nash, followed him for a few blocks, but lost him.

Using the identification card, the police located and arrested petitioner on March 10. Ms. Nash and Messrs. Kim and Shantz each identified him at a lineup that same day and again at trial; Ms. Charley and the security guard also identified him at trial.

On appeal of his convictions, petitioner argued three issues to the Appellate Division: (1) there was insufficient evidence to support the conviction for second degree robbery, which required the displaying of a firearm; (2) there was insufficient evidence to support the conviction for second degree burglary, which required unlawful entry into the dormitory; and (3) the sentence of twelve years to life as a persistent violent felony offender was excessive given that no one was hurt, the amount of money taken was minimal, and the predicate felonies were less serious than many. On November 21, 1996 the Appellate Division affirmed the judgment of conviction in a brief memorandum. 233 A.D.2d 231, 650 N.Y.S.2d 535 (1st Dep't 1996). On February 2, 1997 the Court of Appeals denied leave to appeal the Appellate Division's decision. *People v. Aaron,* 89 N.Y.2d 983, 656 N.Y.S.2d 742, 678 N.E.2d 1358. On March 21, 1997 petitioner filed a motion under N.Y.Crim.Proc.Law § 440.20 in the Supreme Court, New York County, challenging his sentence as a persistent violent felony offender. The court denied his motion on June 2, 1997.

### DISCUSSION

Petitioner raises here only the first of the issues he raised on his direct appeal, claiming that the State failed to prove beyond a reasonable doubt that he displayed what appeared to be a firearm, a required element of second degree robbery. N.Y.Penal Law § 160.10 states in relevant part:

A person is guilty of robbery in the second degree when he forcibly steals property and when . . .

2. In the course of the commission of the crime or of immediate flight there-

from, he or another participant in the crime . . .

(b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . .

The section regarding display of a firearm was added to the statute in 1969. Ch. 1012 § 3, 1969 N.Y.Laws 1561, 1561. The New York Court of Appeals has explained the purpose of the amendment as follows:

[T]he Legislature has denominated the display of "what appears to be" a firearm an aggravating factor which increases the degree of the crime over forcible stealing without such a display (Penal Law, § 160.05). The apparent justification for differentiating the situations is the difficulty of proving when no shot was fired that what appeared to be a weapon was in fact a weapon (Hechtman, Practice Commentaries, McKinney's Cons.Laws of N.Y., Book 39, Penal Law, § 160.15, p. 205) and the effect upon the victim put in fear of his or her life by the display of what appeared to be a weapon.

*People v. Baskerville,* 60 N.Y.2d 374, 380–81, 469 N.Y.S.2d 646, 650, 457 N.E.2d 752 (1983).

In *People v. Lopez,* 73 N.Y.2d 214, 538 N.Y.S.2d 788, 535 N.E.2d 1328 (1989), the New York Court of Appeals explained the statutory scheme and the element of display as follows:

The core requirement for all three degrees of robbery under the Penal Law is proof that the defendant forcibly stole property from another. If, in addition, the defendant or another participant in the crime "[d]isplays what appears to be a pistol, revolver, shotgun, machine gun or other firearm", the offense is elevated to robbery in the first degree. However, if the defendant proves by a preponderance of the evidence that the object displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physi-

cal injury," the crime is reduced to robbery in the second degree....

The statutory scheme serves two primary purposes. First, it recognizes that the additional fear suffered by a robbery victim confronted by what appears to be a firearm aggravates the nature of the offense and warrants additional punishment. Secondly, it recognizes the difficulty of proving that an object displayed during a robbery, which appears to be a firearm capable of causing death or serious injury, was in fact a loaded, operable gun when it was not fired at the scene or recovered afterwards. The statute assumes that the object consciously displayed as a firearm was what it appeared to be and places on the defendant the burden of showing that it was not, in which case he could only be convicted of the lesser, second degree offense.

Although the display element focuses on the fearful impression made on the victim, it is not primarily subjective. The People must show that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display.

However, the object displayed need not closely resemble a firearm or bear a distinctive shape.

73 N.Y.2d at 219–220, 538 N.Y.S.2d at 790–91, 535 N.E.2d 1328 (citations omitted). In *Lopez* the Court of Appeals upheld a jury verdict finding a display when the defendant had put his hand in his vest as if he had a gun. 73 N.Y.2d at 222, 538 N.Y.S.2d at 792, 535 N.E.2d 1328.

■ The standard for measuring the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324, 99 S.Ct. 2781 (emphasis in original).

*See also Herrera v. Collins,* 506 U.S. 390, 401–02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Lewis v. Jeffers,* 497 U.S. 764, 781–82, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Malsh v. Hanslmaier,* 102 F.3d 69, 70 (2d Cir.1996); *Rapetti v. James,* 784 F.2d 85, 90 (2d Cir.1986); *Arce v. Smith,* 710 F.Supp. 920, 933 (S.D.N.Y.), *aff'd,* 889 F.2d 1271 (2d Cir.1989), *cert. denied,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990). "As long as any competent evidence went to the factfinders from which they could infer guilt beyond a reasonable doubt, the conviction will stand." *McShall v. Henderson,* 526 F.Supp. 158, 161 (S.D.N.Y.1981). *See also United States v. Adegbite,* 877 F.2d 174, 180 (2d Cir.), *cert. denied,* 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989); *Martin v. Scully,* 748 F.Supp. 159, 163 (S.D.N.Y.1990). This court cannot substitute its own evaluation of the evidence for the jury's, even in a case where it might be inclined to differ. *See Jackson v. Virginia,* 443 U.S. at 319–20, 99 S.Ct. 2781; *Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984); *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981); *Nieves v. Leonardo,* No. 90 Civ. 4938(LMM), 1994 WL 538289, 1994 U.S.Dist. LEXIS 14008, at *2–*3 (S.D.N.Y. October 3, 1994).

■ The testimony regarding petitioner's display of a firearm came from Mr. Kim, describing events as he followed petitioner down the stairway:

A. ... And I kept yelling and he said, he reached his hand into his pocket like this and said you know in a threatening manner, be quiet. I can't remember what exactly he said but he told me to, he told me to be quiet.

Q. What tone of voice did he use?

A. It was like very, I was threatened, so to speak, I can't really describe what kind of manner he said, what kind of tone it was, but it was threatening manner.

\*  \*  \*  \*  \*  \*

Q. Mr. Kim, what I would like you like (sic) to do, describe the gesture for the record, repeat for the members of the jury how the defendant motioned while he threatened you, if you can describe that motion.

THE COURT: Stand up.

A. He was, like he reached his right hand in his pocket, he was wearing green ski, I think green ski parka or something then he reached his hand in his pocket like this.

Q. So—

MR. LoSQUADRO [Prosecutor]: So, Your Honor I will indicate for the record and you tell me if you disagree or if counsel disagrees, a reaching motion inside of the jacket to something that might be kept under the arm.

THE COURT: All right, approximately chest level, with the arm.

MS. COHEN [Defense]: Well, I would just agree his reaching in to his pocket, I don't know why he is reaching or if he is reaching for something but the motion of reaching towards.

THE COURT: I agree. Was the reaching inside of the jacket or was it outside?

THE WITNESS: Inside.

THE COURT: Inside the jacket. Continue please.

Q. Mr. Kim, how did you react to that?

A. I was very very threatened and startled, I was scared to death.

Q. Why were you threatened and startled and scared to death?

A. Because I thought he had a weapon in there.

Trial Transcript ("Tr.") at 288–290. Mr. Kim elaborated during cross-examination:

Q. Do you know—withdrawn—you don't know if he had a gun?

A. That of course I mean, I don't know for sure he had a gun or not but that time I was scared to death. He was reaching his hand into his jacket and I thought this guy I mean, I'm not sure if he had a weapon or not but at that time I thought for certain that he had a weapon, if he had weapon.

A lot of thoughts are going through my mind you know, I was scared to death at the time.

Q. When you say a weapon what do you mean?

A. A gun.

Q. Do you mean a gun or a knife or just a gun?

A. I mean if he had a weapon, if he had a knife you put it behind your pocket. But if you had, if you have a gun you put it in there so I assume it was a gun.

*Id.* at 302–03.

■ A rational jury, crediting Mr. Kim's testimony, could properly conclude that petitioner had "displayed" a firearm for purposes of the statute. Petitioner does not dispute that his gesture and threatening manner could have reasonably been perceived as display of a firearm. This concession is compelled by New York case law, which holds that "display of anything that appears to be [a firearm], though held inside a coat or otherwise obscured, is covered" by the law. *People v. Baskerville*, 60 N.Y.2d at 381, 469 N.Y.S.2d at 650, 457 N.E.2d 752. Thus, in *People v. Haney*, 162 A.D.2d 613, 556 N.Y.S.2d 939 (2d Dep't 1990), the defendant knocked the victim down, took his money, then put his hand in his pocket, gestured and said to the victim "Don't let me hurt you." This was held to satisfy the requirement that a firearm was displayed. In *People v. Van Voorhis*, 207 A.D.2d 1023, 617 N.Y.S.2d 257 (4th Dep't 1994), the court reinstated an indictment for robbery with display of a firearm where the accused gave a bank teller a note demanding money "or else" and put her hand in her jacket pocket over the heart. In *People v. Knowles*, 79 A.D.2d 116, 436 N.Y.S.2d 25 (2d Dep't 1981), the court held that "where an unarmed robber holds his hand in his pocket

so as to give the impression that he is holding a gun, he has '[d]isplay[ed] what appears to be a ... firearm' within the meaning of our second degree robbery statute." 79 A.D.2d at 123, 436 N.Y.S.2d at 29. Similarly, in *People v. Taylor*, 203 A.D.2d 77, 610 N.Y.S.2d 30 (1st Dep't 1994), the court found a display where the defendant "plac[ed] his right hand under the left side of his jacket, by the waistband, as he demanded money." 203 A.D.2d at 77, 610 N.Y.S.2d at 31. In *People v. Simmons*, 186 A.D.2d 95, 588 N.Y.S.2d 32 (1st Dep't 1992), it was sufficient that the accused "simply thrust his hand forward in his pants as if armed." 186 A.D.2d at 96, 588 N.Y.S.2d at 33.

Petitioner, however, contends that there was insufficient evidence that Mr. Kim in fact thought petitioner had a gun. It is true that on further cross-examination Mr. Kim was less firm in rejecting the possibility that petitioner might have been gesturing to a knife, but the jury could have concluded that his initial statement was credible and sufficient, and moreover, his later testimony certainly did not rule out his fear of a firearm:

> Q. Did you tell the grand jury that you thought he had a gun or a knife?
>
> A. Or a knife.
>
> THE COURT: I'm sorry, is that so?
>
> THE WITNESS: Yes.
>
> Q. So, you don't really know what kind of weapon it was but you thought he had something that could hurt you?
>
> . . .
>
> A. Something that might have hurt me.

Tr. at 305. It is also true that Mr. Kim's act in continuing to follow petitioner down the staircase, albeit at a distance, might indicate he did not really believe petitioner had a gun. These factors were for the jury to decide, and were in fact argued to them. *Id.* at 442–43. Having heard the arguments, the jury decided against petitioner. This court cannot second-guess such a determination the jury could have made after hearing and observing the witness. Indeed, it was the jury, not this court, who saw Mr. Kim demonstrate the gesture made by petitioner. Such determinations are solely within the province of the jury. *See Marshall v. Lonberger*, 459 U.S. 422, 434–35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Maldonado v. Scully*, 86 F.3d at 35; *United States ex rel. Scarincio v. Coughlin*, 657 F.Supp. 433, 436 (S.D.N.Y. 1987); *Soto v. Lefevre*, 651 F.Supp. 588, 592 (S.D.N.Y.1986), *aff'd*, 812 F.2d 713 (2d Cir.), *cert. denied*, 482 U.S. 907, 107 S.Ct. 2486, 96 L.Ed.2d 378 (1987).

Moreover, even if Mr. Kim was in fact uncertain as to whether petitioner had a gun or a knife, that would not affect the propriety of his conviction under New York law. "A robbery victim is not, in our view, required to call a robber's bluff, in order to allay any lingering uncertainty, before the armed offense is made out." *People v. Bynum*, 125 A.D.2d 207, 209, 509 N.Y.S.2d 321, 323 (1st Dep't 1986), *aff'd*, 70 N.Y.2d 858, 523 N.Y.S.2d 492, 518 N.E.2d 4 (1987). Thus, in *People v. Simmons*, the court noted:

> [A] fair reading of the witness's testimony is that he believed defendant was armed with a gun, or possibly another type of weapon. The Penal Law § 160.15(4) [first degree robbery] requires only that the object displayed reasonably appears to be a gun, not that it is in fact a gun or that it could be nothing but a gun.

186 A.D.2d at 97, 588 N.Y.S.2d at 34. Similarly, in *People v. Washington*, 229 A.D.2d 601, 602, 646 N.Y.S.2d 39, 40 (2d Dep't 1996), the court upheld a verdict finding display when the victim testified she thought the defendant had "probably a gun or a knife, I'm not really sure." In *People v. Haney*, 162 A.D.2d at 614, 556 N.Y.S.2d at 940, the court found sufficient evidence of display although the victim "stated on cross-examination that he had not 'decided' that the object displayed actually 'looked like' a gun". *See also People v. Taylor*, 203 A.D.2d at 77, 610 N.Y.S.2d

at 31 (bulge displayed "could have been explained otherwise" than as a gun); *People v. Mercado*, 148 A.D.2d 365, 366, 539 N.Y.S.2d 323, 324 (1st Dep't 1989) (victim "thought defendant had a weapon").

In enacting the law in question the New York legislature was responding to "the additional fear suffered by a robbery victim." *People v. Lopez*, 73 N.Y.2d at 220, 538 N.Y.S.2d at 790, 535 N.E.2d 1328. Mr. Kim testified that as a result of petitioner's action he was "scared to death." Causing that fear is precisely what the law is intended to punish. Certainty on Mr. Kim's part that what petitioner displayed was actually a gun is not required.

The petition should therefore be denied. *See, e.g., Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 555 (E.D.N.Y.1999); *Haney v. Leonardo*, No. CV–91–3577 (ILG), 1993 WL 173627, at *3–*4, 1993 U.S.Dist. LEXIS 6978, at *9–*11 (E.D.N.Y. May 13, 1993).

August 6, 1999.