This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 23
The People &c.,
        Respondent,
      v.
Charles Smith,
        Appellant.

Craig A. Stewart, for appellant.
William H. Branigan, for respondent.

FAHEY, J.:

Here we face the question of whether the facts of this case fit within our analysis in People v Lopez (73 NY2d 214 [1989]). We conclude they do. In Lopez, there was testimony that a defendant placed one of his hands under his clothing and conveyed to the witness that he had a gun. We held this evidence

- 1 -

to be legally sufficient to establish display of what appears to be a firearm under Penal Law § 160.15 (4).  Here, the evidence presented a question of fact for the jury to determine whether a reasonable person would believe that defendant displayed what appeared to be a firearm.

I.

Defendant was charged with attempted robbery in the first degree (Penal Law §§ 110.00 [attempt], 160.15 [4] ["forcibly steals property and . . . , in the course of the commission of the crime or of immediate flight therefrom, . . . (d)isplays what appears to be a . . . firearm"]).  His identity as the perpetrator of the attempted robbery is not disputed.  Rather, the question before us is whether the evidence is legally sufficient to establish that defendant's conduct amounted to displaying what appeared to be a firearm.  Defendant seeks reduction of his conviction to attempted robbery in the third degree.

At trial, the teller at a check cashing store testified that defendant demanded money, told her repeatedly that he had a gun, verbally threatened to shoot her, and "showed" her, by means of a hand placed under his sweatshirt, that a gun was concealed there.  When defendant was arrested in the vicinity, after abandoning the robbery attempt, no firearm was recovered.

The precise moment at which defendant placed one of his hands under his hooded sweatshirt is not clear from the record.

During her testimony, the teller physically demonstrated an action performed by defendant or a pose assumed by him, explaining that defendant "was doing this" and "showed me like this," and that he thereby conveyed to her that he had a gun underneath his sweatshirt.  Asked whether defendant had "reached into his waistband" and "put one of his hands under his hoodie," she answered both questions in the affirmative.  However, the teller was not expressly asked whether defendant placed his hand under his sweatshirt after entering the store.

Defendant moved to dismiss on the ground that the teller's testimony had been "extremely vague" in regard to his bodily stance or actions.  The trial court denied the motion, citing People v Lopez, and reasoning that

> "although words alone cannot constitute
> display[ing] what appears to be a firearm,
> . . . the words spoken by [defendant]
> consistent with the physical display . . . in
> terms of his manipulations and his waistband
> . . . present a question of fact for the jury
> as to whether a reasonable person could
> perceive that there is the presence of a
> gun."

The trial court instructed the jury on attempted robbery in the first degree as well as the lesser included offense of attempted robbery in the third degree.  Defendant did not request a jury instruction on the affirmative defense to robbery in the first degree or an instruction on robbery in the second degree as a lesser included offense, and no such charge was provided to the jury.  The jury found defendant guilty as

charged.

On appeal, defendant challenged his conviction on legal sufficiency grounds. The Appellate Division affirmed the trial court's judgment, holding that "[t]he prosecution presented sufficient evidence establishing that the defendant displayed what appeared to be a firearm while attempting to commit a robbery at a check-cashing store" (124 AD3d 918, 918 [2d Dept 2015]).

A Judge of this Court granted defendant leave to appeal (26 NY3d 1043 [2015]). We now affirm.

II.

A person is guilty of robbery in the first degree under Penal Law § 160.15 (4)

> "when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a . . . firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such . . . firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged."

The statute, enacted in 1969, "assumes that the object consciously displayed as a firearm was what it appeared to be and places on the defendant the burden of showing that it was not, in which case he could only be convicted of the lesser, second degree offense [Penal Law § 160.10 (2) (b)]" (Lopez, 73 NY2d at 220, citing People v Lockwood, 52 NY2d 790 [1980]; see also Mem

in Support, Bill Jacket, L 1969, ch 1012, at 3).

Defendant's principal argument may be summarized as follows.  The victim did not testify with precision as to whether defendant had his hand in his waistband from the beginning of the encounter or placed it there while threatening to shoot her.  Therefore, defendant would have us conclude, a rational jury could not have found beyond a reasonable doubt that defendant performed an intentional act of displaying what appeared to be a firearm.  Relatedly, defendant suggests that insofar as there is no evidence that he created the appearance of a gun being brandished or pointed toward the victim, the jury could not have reasonably inferred that he displayed what appeared to be a firearm.  In a secondary argument, defendant contends that the People failed to prove that he consciously or deliberately displayed what appeared to be a firearm.

III.

The controlling precedent is People v Lopez.  Nevertheless, a review of the background predating Lopez is informative.

In People v Lockwood (1980), the defendant held an object to the back of a gas station attendant's neck and threatened to shoot him.  The jury heard testimony that the defendant told the arresting officer that the object was a toothbrush.  A toothbrush, and no gun, was found on the defendant's person when he was arrested.  The defendant requested

a jury instruction on the affirmative defense to robbery in the first degree -- that the firearm displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged" (Penal Law § 160.15 [4]) -- and asked that the lesser included offense of robbery in the second degree be charged. The trial court denied both requests, and submitted to the jury the charge of robbery in the third degree as a lesser included offense.

On appeal from his conviction of robbery in the first degree, defendant Lockwood argued that, under the circumstances of the case, it was reversible error for the trial court to refuse his request to charge the jury regarding the affirmative defense. This Court agreed with the defendant and ordered a new trial, reasoning that "[w]ithout the benefit of the requested charge, the jurors may well have believed that defendant had committed the robbery with a toothbrush, yet also believed that it was their duty to find him guilty of robbery in the first degree because the toothbrush which he displayed appeared to be a pistol" (Lockwood, 52 NY2d at 792).

Although we ruled that Lockwood should have been permitted the requested instruction on the affirmative defense, our decision contained an important observation. As we subsequently noted, this was "that even if defendant's statement that he committed the robbery by holding a toothbrush in his coat pocket to simulate a gun were accepted as true, he could still be

guilty of displaying what appears to be a firearm, and would succeed only in reducing his liability from first degree robbery to second degree" (People v Baskerville, 60 NY2d 374, 381 [1983]).

Later, we emphasized that the precise nature of the object that a defendant displays is not dispositive when analyzing whether a defendant displayed what appeared to be a firearm. In People v Baskerville (1983), the robber wrapped a towel around one of his arms, raised the arm, and pointed it at one of his victims, while threatening to kill her. There was also testimony that a witness saw a black object inside the towel, which she thought was a gun. We set out a two-part test: the People must prove that (1) the defendant "consciously display[ed] something that could reasonably be perceived as a firearm," and (2) it "appear[ed] to the victim by sight, touch or sound that [the victim was] threatened by a firearm" (Baskerville, 60 NY2d at 381; accord William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 160.00 at 12).[1] We concluded that "[w]hen both of these requirements are satisfied, . . . the true nature of the object

---

[1]     Notwithstanding the dissent's argument based on the legislative history, we have long recognized that the victim's fear of harm is significant in cases involving the use or perceived threat of a firearm (see People v Hedgeman, 70 NY2d 533, 541 [1987] [describing the aggravating factors as "reflect[ing] a concern for the added element of physical harm, danger, and perceived threat of additional violence to the victims of the robbery"]).

displayed is, as concerns criminality, irrelevant" (Baskerville, 60 NY2d at 381 [citation omitted]).

Baskerville did not address whether a defendant may be guilty under the same statute if he or she does not display any object that itself gives the appearance of a gun, but merely covers a hand in such a way that it seems to be holding or reaching for a gun. Our decision in People v Lopez (1989) then clarified the issue that had been left unresolved, and held that the "object displayed" could be a hand.

In Lopez, the defendant said "this is a stick up" and demanded that the victim hand over a radio. The victim testified that Lopez simultaneously "put his hand in the right side of his vest 'as if he had a gun'" (Lopez, 73 NY2d at 218). The victim surrendered the radio. A jury found Lopez guilty of robbery in the first degree under Penal Law § 160.15 (4), but the trial court set aside the verdict, concluding that there was no evidence of displaying what appeared to be a firearm because "there was no proof that when the defendant placed his hand inside his vest he 'made the shape of any object or that the victim saw any object displayed'" (Lopez, 73 NY2d at 218). The Appellate Division reversed on the basis that although the display of what appears to be a firearm "requires a display of something that could reasonably be perceived as a firearm, there is no requirement that the object . . . be anything other than the defendant's hand" (People v Lopez, 135 AD2d 443, 443-444 [1st

Dept 1987] [internal quotation marks, citations, and brackets omitted]).

The Court of Appeals affirmed.  To sustain a conviction for robbery in the first degree (Penal Law § 160.15 [4]), "[t]he People must show that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display" (Lopez, 73 NY2d at 220).  A mere verbal threat is insufficient.  The Court held, however, that "the object displayed need not closely resemble a firearm or bear a distinctive shape," and may be an object "held inside a coat or otherwise obscured," such as "[a] towel wrapped around a black object, a toothbrush held in a pocket or even a hand consciously concealed in clothing" (id. [citations omitted] [emphasis added]).[2]

The Lopez Court framed the governing standard as follows.  A defendant displays what appears to be a firearm within the meaning of Penal Law § 160.15 (4) "if under all the

---

[2]    The dissent argues that our interpretation of Penal Law § 160.15 does not comport with the plain meaning of the word "display" and that if defendant had possessed a firearm hidden under his sweatshirt it would naturally be described as "concealed" rather than "displayed" (see dissenting op., at 2-3). This objection conflates displaying what appears to be a firearm with displaying a firearm.  Even if defendant was attempting to conceal the true nature of the item beneath his sweatshirt, i.e., his hand, he was in no way concealing from the teller that he had something under his sweatshirt.  On the contrary, he can fairly be characterized as displaying the appearance of a firearm.

circumstances the defendant's conduct could reasonably lead the victim to believe that a gun is being used during the robbery" (Lopez, 73 NY2d at 220).

People v Mendez, a companion case to Lopez, was resolved in the same opinion. There, the defendant demanded that the victim hand over everything he had on him, taking a watch, chain, and cash. Meanwhile, another man sat on a nearby stoop, watching the robbery, with his right hand under his shirt. The victim testified that Mendez told the second man not to show or take out the gun. A jury found Mendez guilty of robbery in the first degree, on the theory that a defendant may be held liable for the acts of "another participant" who displays what appears to be a firearm during the robbery (Penal Law § 160.15). The trial court and the Appellate Division rejected Mendez's argument that the evidence was insufficient to establish that he or the man on the stoop displayed what appeared to be a firearm. This Court, however, agreed with Mendez, holding that the conduct of the man on the stoop was not sufficient to constitute displaying what appeared to be a firearm, because the man did not "take any action" showing that he had a firearm, but "[o]n the contrary, throughout the robbery . . . simply sat on the stoop with his hand under his shirt, literally on the sidelines, immobile, inconspicuous and indifferent" (Lopez, 73 NY2d at 222).

Our decision in Lopez was not unanimous. The partial dissent would have reversed in Lopez as well as in Mendez, and

wrote that "the majority has replaced the requirement that there be an actual display of <u>some physical object</u> appearing to be a gun with the far less exacting requirement of some symbolic gesture, other than speech, conveying nothing more than an impression that the robber may have such a physical object" (<u>Lopez</u>, 73 NY2d at 224-225 [Titone, J., dissenting]).  The dissenting Judges would have held "that the 'display' element is not satisfied absent proof that 'something,' be it a real gun, a toy gun or even a toothbrush or hand concealed in a pocket, has been brandished, pointed or poked at the victim" (<u>id.</u> at 226).

IV.

We reject defendant's assumption that the timing of the moment at which the defendant places a hand under his clothing is dispositive of the legal sufficiency analysis.  A victim may reasonably believe that a gun is being used, on the basis of conduct that makes it appear that the defendant is holding a gun, regardless of whether the defendant makes a movement while addressing the victim or keeps his hand concealed throughout the encounter in a manner and location suggesting the presence of a gun.  Whether a defendant displays what appears to be a firearm does not depend on when precisely the defendant begins the display, provided it occurs "in the course of the commission of the crime or of immediate flight therefrom" (Penal Law § 160.15 [4]).

Our precedents are not to the contrary.  In particular,

Mendez, the companion case to Lopez, does not stand for the proposition that a person who, throughout an encounter with a victim, leaves a hand concealed under clothing cannot be guilty of robbery in the first degree.  The factual circumstances of Mendez were unique in that the second man did not approach the victim or signal involvement in the crime by any words or action.

It is true that in describing the grounds of legal sufficiency in Baskerville we observed that "[t]he evidence . . . that the towel wrapped around the robber's arm concealed a black object that appeared to one of the persons threatened to be a gun, and that the robber raised his arm toward a person and threatened to kill the person his arm was pointed at, was clearly sufficient to establish that the robber displayed what appeared to be a firearm" (Baskerville, 60 NY2d at 381-382).  However, Baskerville does not require, in every case, that the defendant perform an active movement perceived by the victim that makes it appear that he has a gun.  Neither Baskerville nor Lopez addresses the scenario in which a defendant who demands money keeps a hand concealed in clothing throughout the encounter, and no decision of this Court on point has been brought to our attention.

A related argument offered by defendant is that there was no testimony that he used his hand to carry out a movement or to create a bulge in his clothing to give the appearance that he was pointing a gun at the teller or brandishing a firearm.  The

contention, drawing on the Lopez dissent, is that a defendant must make a pointing or waving movement or create some effect with his hand, other than purposefully placing it inside his clothing, in order to display what appears to be a firearm. In other words, defendant appears to argue that, for a hand to be sufficient, the hand has to be used to simulate a gun, rather than to simulate a hand holding a gun.

This argument, however, is inconsistent with Lopez, which upheld the conviction of a defendant who simply placed his hand in one side of his vest as if he had a firearm (see Lopez, 73 NY2d at 221-222). Moreover, the Lopez Court emphasized that "the object displayed need not closely resemble a firearm or bear a distinctive shape" (Lopez, 73 NY2d at 220). The requirement that a hand be manipulated to look like a gun is inconsistent with our acceptance in Lopez that the thing displayed need not have a gun-like shape.[3]

Notably, defendant does not ask us to overrule Lopez. Nor would we. A rule such as the one outlined in the Lopez dissent would have inadequate grounding in policy: there is little reason to consider a robbery a graver crime if the victim formed the impression that the perpetrator was pointing a gun, as

---

[3]     Contrary to the dissent, defendant is seeking reversal on a basis that we hold to be "controlled by our prior decisions" (dissenting op., at 2). While defendant seeks to distinguish Lopez, we hold that Lopez is not distinguishable. However, defendant does not seek to overturn that decision.

opposed to the impression that the perpetrator was reaching for a gun. To the extent a court might consider pretending to point a gun a more serious offense, such concerns are outweighed by the impractical nature of a law that would often require testimony as to the exact size, shape, and orientation of a bulge in a defendant's vest or shirt. By contrast, Lopez offers a clear rule that has been followed consistently by the courts of this State in numerous decisions for nearly 30 years (see e.g. People v Williams, 100 AD3d 1444, 1445 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]; People v Welsh, 80 AD3d 456, 456-458 [1st Dept 2011], lv denied 16 NY3d 864 [2011]; People v Mitchell, 59 AD3d 739, 740 [2d Dept 2009], lv denied 12 NY3d 918 [2009]); People v Middleton, 247 AD2d 713, 713 [3d Dept 1998], lv denied 92 NY2d 856 [1998]; People v Avilla, 234 AD2d 45, 45 [1st Dept 1996]; People v Haney, 162 AD2d 613, 613-614 [2d Dept 1990], lv denied 76 NY2d 940 [1990]).

Defendant's secondary argument concerning conscious intent is not persuasive. Certainly, the People were obliged to prove that defendant "conspicuously and consciously conveyed the impression" that he had a firearm (Lopez, 73 NY2d at 222). Here, the jury could have inferred from the testimony that defendant held one of his hands under his sweatshirt, while telling his victim that he had a gun, that he consciously intended to convey that he had a gun. Viewing the evidence in the light most favorable to the People, the jury could rationally have inferred,

albeit circumstantially, that the hand placement was deliberate, and designed to back up the verbal threat with the simulated action of holding or reaching for a gun.

V.

The dissent argues that the Legislature, in enacting the statute, was entirely concerned with "the evidentiary difficulty of proving that an actual gun was loaded and operable" (dissenting op., at 8). Significantly, the dissent does not call for Lopez to be overruled. This is appropriate because Lopez interpreted a statute, and this Court rarely overrules its own interpretations of statutes, particularly where the defendant has not asked us to do so. However, the dissent's conclusion on legal sufficiency (see dissenting op., at 17) would require this Court to overturn Lopez.

Finally, we note that the affirmative defense to robbery in the first degree is equally as available to an unarmed robber who creates the impression of firearm possession as it is to a robber who possesses an unloaded or inoperable firearm (see Lockwood, 52 NY2d at 792). "[R]obbery in the second degree is the appropriate offense when, in fact, the defendant has simply used his hand to create the impression he is armed with a gun. However, the burden is on the defendant to prove this as an affirmative defense at trial" (Lopez, 73 NY2d at 222 n 2 [citations omitted]). Defendant could have sought an instruction

on robbery in the second degree but failed to do so.[4]

Defendant's challenge to the legal sufficiency of the evidence against him fails. The jury could have found beyond a reasonable doubt that, under all the circumstances, defendant's conduct could reasonably have led the victim to believe that a gun was being used during the robbery (see Lopez, 73 NY2d at 220).

Accordingly, the order of the Appellate Division should be affirmed.

---

[4] The dissent suggests that if a defendant had no firearm-like object other than his hand, then "the proper offense is third-degree attempted robbery" (dissenting op., at 17). This would follow only on the dissent's theory of the statute. Under Lopez, however, the appropriate offense is robbery in the second degree if the People prove that defendant displayed what appeared to be a firearm but defendant is able to prove that he had no firearm (see Lopez, 73 NY2d at 219, 220, 222 n 2). Robbery in the third degree (Penal Law § 160.05) is the proper offense only when a defendant forcibly steals property and neither displaying the appearance of a firearm nor any of the other aggravating factors is present (see Lopez, 73 NY2d at 219).

People v Charles Smith

No. 23

ABDUS-SALAAM, J.: (concurring).

I concur in the result on constraint of People v Lopez
(73 NY2d 214 [1989]).  I note, as do the majority and the
dissent, that defendant has not asked this Court to overrule
Lopez.

People v Charles Smith

No. 23

WILSON, J.(dissenting):

A homeless man walks into a check-cashing store.  This sounds like the start of a bad joke, but instead is filled with pathos.  Charles Smith, with one hand covered by the bottom of his hoodie, demanded money, eventually threatening to shoot the cashier (who was behind bulletproof glass). He challenges his first-degree attempted robbery conviction, on the ground that he did nothing to "display[] what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  His conviction for first-degree attempted robbery resulted in the imposition of a 16-year-to-life prison sentence.[1]  That is not what the legislature or Governor intended.  As the majority notes, Mr. Smith does not ask us to reconsider or modify any of our prior decisions interpreting Penal Law section 160.15.  Instead, he seeks reversal on a ground not controlled by our prior decisions: that an unarmed person who "makes no movements" of his or her concealed hand while threatening the presence of a gun cannot be

---

[1]  Had Mr. Smith instead been convicted of attempted robbery in the third degree, he would not have been classified as a persistent violent felony offender (see Penal Law §§ 70.02 [1]; 70.08).  Attempted third-degree robbery is a class E felony (see Penal Law §§ 110.05; 160.05), for which the maximum sentence "shall not exceed four years" (Penal Law § 70.00 [2] [e]).

convicted for attempted robbery in the first degree. Because neither People v Lopez (73 NY2d 214 [1989]) nor any prior precedent compels affirmance, I would not extend our prior missteps by affirming here.

I.

Over the years, our Court has erroneously broadened the scope of the aggravating factor, "displays what appears to be a . . . firearm," without regard for the legislature's actual intent in enacting that language. Neither the legislature nor Governor Rockefeller intended that a defendant, who displayed no object whatsoever during the commission of the crime, could be convicted of attempted robbery in the first degree.

In construing any statute, we must start with its plain meaning and then, if unclear, examine its legislative history (see Riley v County of Broome, 95 NY2d 455, 463-464 [2000]; Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]). Here, the ordinary meaning of "display" is to show or make something evident (see Merriam-Webster Dictionary ["to put or spread before view," "to make evident," or "to exhibit ostentatiously"]; see also Oxford English Dictionary ["(to) put (something) in a prominent place in order that it may readily be seen"]). Stretching "display[] what appears to be a firearm" to a situation in which nothing is shown or made evident requires some proof that the legislature intended that meaning, because it is unnatural. In Mr. Smith's case, even

if he had possessed a firearm hidden under his hoodie, we would have referred to it as "concealed", not "displayed."  To reach the conclusion that the legislature meant what, in common parlance, would be the opposite of what it wrote (i.e., "displayed" included "concealed"), we would need legislative history powerfully demonstrating that intent.  The legislative history is completely to the contrary.

Prior to 1969, an aggravated robbery charge -- armed with a deadly weapon -- required the People to prove beyond a reasonable doubt that a gun openly displayed during the crime was loaded and operable (see People v Ahmed, 27 AD2d 729, 730 [1st Dept 1967]; People v Gordon, 19 AD3d 828, 829 [2d Dept 1963]).  That task proved to be immensely difficult if the defendant never fired a shot or was not quickly apprehended in possession of (or otherwise tied to) the still-loaded firearm.  Accordingly, in 1969, the legislature amended New York's robbery statute to address that specific evidentiary problem by adding "[d]isplays what appears to be a . . . firearm" as an aggravating factor for both first- and second-degree robbery (Penal Law §§ 160.10 [2] [b]; 160.15 [4]; see L 1969, ch 1012).  Thus, "when a participant in the [robbery] exhibits an object appearing to be a firearm, then a presumption -- rebuttable, of course -- exists that such participant [in the robbery] was armed with a deadly weapon" (Sponsor's Mem, Bill Jacket, L 1969, ch 1012 at 3).  For first-degree robbery, the amendment also made available an

affirmative defense that the firearm displayed was either unloaded or incapable of being fired (see Governor's Approval Mem, Bill Jacket, L 1969, ch 1012 at 17).

The justification for the legislation, contained in the bill jacket, stated: "The need for the presumption created by this bill is a practical one" -- to help solve the problem involving situations where "proof that the object displayed was, in fact, a loaded weapon, is well-nigh-impossible to obtain" (Sponsor's Mem, Bill Jacket, L 1969, ch 1012 at 3). Likewise, the Governor's memorandum accompanying the legislation described the bill as one "to increase the penalties for robbery where firearms are displayed" (Governor's Approval Mem, Bill Jacket, L 1969, ch 1012 at 17). Governor Rockefeller stated: "Specifically, the bill provides that a firearm displayed during the commission of . . . a robbery is presumed to be loaded and would constitute . . . Robbery in the First Degree" (id. [emphasis added]). He also noted that "[d]efendants charged with such acts would be permitted to prove, as an affirmative defense, that the firearm exhibited was either unloaded or incapable of being fired," in which case the crime would be reduced to second-degree robbery (id. [emphasis added]). It is important to note, as I discuss later, that neither the legislature nor the Governor provided any indication that the enhancements provided by the legislation were out of any concern for heightened fear by the victim -- that rationale was belatedly created by our and

other courts.

Additionally, both the New York State Temporary
Commission on Revision of the Penal Law and Criminal Code and the
Crime Control Council,[2] writing in support of the bill,
consistently described the legislation as addressing the
evidentiary problem described above (see Letter from the New York
State Temporary Commission on Revision of the Penal Law and
Criminal Code, Bill Jacket, L 1969, ch 1012 at 5-6 ["(w)e
consider these amendments to be a reasonable and equitable
solution to a very serious law enforcement problem" involving the
"impossible (task of) prov(ing) that (the defendant) was 'armed'
when he (or she) committed the crime -- even if (the defendant)
has a loaded gun in his (or her) possession when apprehended)"];

---

[2]  The New York State Temporary Commission on Revision of
the Penal Law and Criminal Code (the Bartlett Commission), "an
arm of the State Legislature" (People v Petre, 151 Misc 2d 543,
546-547 [Sup Ct, Queens County 1991]), was created in 1961 upon
the recommendation of Governor Rockefeller and tasked with
"revis[ing] the penal law and determin[ing] the proper role and
function of sentencing" (Joshua Logan Pennel, Comment, The End of
Indeterminate Sentencing in New York: The Death and Rebirth of
Rehabilitation, 58 Buff L Rev 507, 512-513 [2010]).  "The
legislature gave the Bartlett Commission carte blanche to develop
both a penal law and a complimentary sentencing structure" (id.
at 513).  The Crime Control Council was created in 1967 to combat
a "steady increase in crime rate . . . through improved
coordination and cooperation of all the state agencies concerned
with law enforcement, criminal justice and post-adjudicatory
treatment of offenders" (L 1967, ch 167 at 708).  It was "made up
of the heads of the state departments and agencies concerned with
the control of crime" and tasked with the duty of "advis[ing] and
assist[ing] the governor" in various ways in matters relating to
the control of crime (id.).

Mem by Chairman of the Crime Control Council, Bill Jacket, L 1969, ch 1012 at 9 ["(t)he bill . . . deals with the problem of proof which occurs when a . . . robber displays what appears to be a firearm" but does not discharge the weapon or is not apprehended immediately afterwards so that "the prosecution is generally unable to prove that the defendant was in possession of a 'deadly weapon,' an element of robbery (in the) first degree"]).

Likewise, the State Police also described the legislation's purpose as "neatly do[ing] away with the ancient dilemma concerning loaded vs unloaded guns" (Mem by New York State Police, Bill Jacket, L 1969, ch 1012 at 11). The Honorable Albert Rosenblatt, then Dutchess County District Attorney and later a Judge of this Court, wrote to explain that the legislation "deals with the operability of a gun (or whether it was loaded) in the context of a robbery situation" (Letter from Albert Rosenblatt, District Attorney of Dutchess County, Bill Jacket, L 1969, ch 1012 at 15). None of those statements contains any suggestion that any part of the legislative intent was to enhance penalties based on increased fear by the victim.[3]

---

[3] The only support for the proposition that the legislation in any way related to increased fear by the victim, if a weapon were displayed, came from the State Administrator of the Judicial Conference of the State of New York, who sent a letter suggesting that the bill would "accomplish two good things" by (1) recognizing "the additional element of fright caused by the perpetrator's pretended possession of a firearm" and (2) "assist[ing] in the proof of a case against a defendant who

The difference in the statutory language for first- and second-degree robbery in the 1969 legislation further underscores the legislature's intent that the display of something that was or looked very much like a real firearm was essential to conviction under either prong of the statute.  Both section 160.10 (robbery in the second degree) and 160.15 (robbery in the first degree) contain the exact same operative language: "A person is guilty of robbery in the [first or second] degree when he [or she] forcibly steals property and when . . . [he or she] [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law §§ 160.10 [2] [b], 160.15 [4]).  However, section 160.15 (first degree) allows the defendant to prove, as "an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged," in which case the conviction would be reduced to second-degree robbery.

The statutory language makes sense only in the context of the legislative history: that the problem addressed by the

---

displayed an object during the perpetration of a crime" (Letter from the State Administrator of the Judicial Conference of the State of New York, Bill Jacket, L 1969, ch 1012 at 12).  His suggestion has no bearing on the legislature's or Governor's intent; moreover, the State Administrator expressly stated that "[t]his bill . . . ha[d] not been considered by the Judicial Conference" (id.).

statute was the evidentiary difficulty of proving that an actual gun was loaded and operable -- not anything having to do with enhanced fear of the victim.  Thus, the legislature modified the definition of first-degree robbery to address situations where something that was or looked very much like a real weapon was displayed -- not because of the fear that might create, but to address a problem of proof where *a real firearm was very likely used*.  It would follow, then, that prosecutors would charge second-degree robbery where, for example, the defendant was apprehended during commission of the robbery and the firearm was unloaded, or was a toy gun.  Without the guidance of the legislative history, the amendment could be interpreted, and has now been by this Court, to allow unarmed persons with a hand in a pocket to be charged with the same crime as a robber who fired shots.

Nevertheless, despite the clear intended purpose of the statute as amended, our Court has, over the years, deviated from the legislative intent without examining it in any detail.

III.

I begin with People v Lockwood (52 NY2d 790 [1980]), which the majority discusses, and whose holding is consistent with the statutory language and legislative intent.  Lockwood's holding does not concern the "displays what appears to be a firearm" language, but rather the affirmative defense provided by the legislation.

The sole issue raised on appeal to this Court in Lockwood was whether Supreme Court erred in failing to instruct the jury on the affirmative defense contained in section 160.15 (see Def's Brief & Appdx, at 2, available in New York Ct of App Cases & Briefs, 1980, vol 398). Mr. Lockwood did not raise the issue of whether the use of a toothbrush out of the vision of the victim (thrust into the back of his neck) constituted "display of what appears to be a firearm". In fact, as part of his defense strategy, Mr. Lockwood's counsel conceded that Mr. Lockwood "had used the toothbrush in a manner intended to make the toothbrush appear to be a pistol" (id. at 16-17). Thus, Lockwood's holding is just that a defendant who requests and is refused an instruction on the affirmative defense that the "weapon" displayed was really a toothbrush (and hence "not capable of being fired") is entitled to that instruction. It contains no holding on whether a toothbrush (or concealed hand) sufficiently appears to be a firearm.[4]

---

[4] Lockwood is precisely the kind of case the legislature meant to reach through the 1969 amendments. After Mr. Lockwood pressed something into the neck and side of his victim, threatening to shoot him, two officers arrived while Mr. Lockwood was rifling through the gas station's cash register (see People's Brief, at 3, available in New York Ct of App Cases & Briefs, 1980, vol 398). An attendant at the gas station testified that he was certain Mr. Lockwood had pressed a gun into the other attendant's neck; one officer testified that Mr. Lockwood was armed with what appeared to be a "silver handgun"; the other officer testified that Mr. Lockwood was lifting his right hand and pointing a silver or chrome object with a four-inch barrel at him, which appeared to be a handgun (id. at 4). Mr. Lockwood fled in his car and eluded the officers on the scene, but was

Both the majority here and prior decisions of our Court, beginning with People v Baskerville (60 NY2d 374 [1983]), misinterpret Lockwood's dicta and apply it as if it were a holding. In dicta, we stated: "If, of course, a defendant successfully proves his affirmative defense, he may still be found guilty of robbery in the second degree, which requires only that the defendant forcibly steal property while displaying what appears to be a firearm" (Lockwood, 52 NY2d at 792 n *). That dicta referred to "a defendant" generally -- not Mr. Lockwood, and even if read to refer specifically to Mr. Lockwood, it arises in a context in which Mr. Lockwood did not argue that his conduct constituted no more than robbery in the third degree: he sought and obtained reversal because of the refusal to charge on his affirmative defense.

Baskerville is where we made our first detour from the legislature's intent, albeit in dicta. Baskerville's holding -- that a black metal object wrapped in a towel, which the robber raised and pointed at a victim accompanied by a threat to kill her could constitute the "display of what appears to be a firearm" -- concerns merely the sufficiency of facts showing that the brandished item was something that appeared to be a firearm. However, Baskerville included a rationale never advanced by the legislature, one that later steered our Court astray in Lopez:

---

caught by officers in New Jersey about half an hour later, with no gun in his possession (see id.).

the idea that the enhancement for first-degree robbery (or attempted robbery) was related to increased fear by the victim. In Baskerville we cited two "apparent justification[s]" for the 1969 legislation: (1) "the difficulty of proving when no shot was fired that what appeared to be a weapon was in fact a weapon" and (2) "the effect upon the victim put in fear of his or her life by the display of what appeared to be a weapon" (60 NY2d at 381). Although we cited authority for the first justification, we cited nothing at all for the second.

Here, the majority points to an observation made in Baskerville concerning Lockwood -- namely, that even if Mr. Lockwood had used a toothbrush to rob his victim, "he could still be guilty of displaying what appears to be a firearm, and would succeed only in reducing his liability from first degree robbery to second degree" (maj opn, at 6). That observation merely recognized that, because Mr. Lockwood challenged only the failure to give an instruction on his affirmative defense, his success in proving his affirmative defense would have reduced his conviction from first-degree to second. It does not constitute a holding that use of a toothbrush (or other item not remotely resembling a firearm) would be sufficient to establish second-degree robbery.

Baskerville compounded the dicta in Lockwood by adding dicta concerning facts not present in Baskerville and rooted in the fictional legislative concern for enhanced fear. Thus, based on the erroneous conclusion that part of the legislature's

purpose was to punish more severely threats that placed the victim in greater fear for his or her life, and the misreading of the dicta in Lockwood described above, we wrote: "[T]he display of anything that appears to be [a firearm] though held inside a coat or otherwise obscured, is covered by sections 160.10 [second-degree robbery] and 160.15 [first-degree robbery]. . . . [T]he true nature of the object displayed is, as concerns criminality, irrelevant" (60 NY2d at 381).  Of course, Baskerville did not involve anything concealed under a coat, and offered no support for the proposition that the legislature intended that someone committing a robbery with a toothbrush could be prosecuted for robbery in the first or second degree, however fearful the victim might have been.

Not until Lopez, however, did we reach a holding (rather than dicta) incompatible with the statute: that although "mere statements that a robber is armed with a gun" are insufficient to establish robbery in the first or second degree (73 NY2d at 221), Mr. Lopez's act of moving his hand inside his vest constituted "display[] of what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  In Lopez, we asserted that a "primary purpose[]" of the statute "recognizes that the additional fear suffered by a robbery victim confronted by what appears to be a firearm aggravates the nature of the offense and warrants additional punishment" (id. at 220), citing only Baskerville, which, as discussed above, cited

nothing, and is not what the legislature, Governor, and other bodies responsible for the legislation said at the time.

Indeed, with particular reference to the interpretation of the statutory "display" requirement as reaching the conduct of Mr. Lopez, who displayed no object at all, Lopez expressly relied on the proposition that "the display element focuses on the fearful impression made on the victim" (id.).  Based on that fictional legislative intent, we wrote: "In light of the purpose of the statutory scheme, the broad wording of the display element, and the obligation to construe the Penal Law fairly to carry out the legislative intent . . . , 'the display of anything that appears to be such [i.e., a firearm], though held inside a coat or otherwise obscured' . . . or even a hand consciously concealed in clothing" constitutes first-degree robbery (id., quoting Baskerville, 60 NY2d at 381).[5]

In People v Mendez, decided with Lopez, we either decided that some movement of the apparent weapon was required to meet the display requirement, or did not resolve that issue.  In

_____

[5]  Lopez was a 4-3 decision.  The dissent adopted the same erroneous conclusion, relying solely on Baskerville, that part of the legislature's intent in enacting the display requirement was "to increase the penalty for putting the victim in fear for his or her life" (Lopez, 73 NY2d at 223 [Titone, J., dissenting]). Consequently, it is not the case that the majority in Lopez considered and rejected the position expressed in my dissent. Rather, the incongruities noted by the dissent provide further evidence that, quite apart from what the legislature and Governor said they meant, they could not have meant to convict an unarmed person of robbery in the first degree.

Mendez, the defendant was standing near a stoop where another man was sitting, with "his hand under his shirt" (id. at 219). As the victim passed by, the defendant assaulted him, robbed him of a watch, chain, and $80, and told the man sitting on the stoop "don't show him the gun" or "don't take out the gun" (id.). The man on the stoop "watch[ed] the robbery with his right hand under his shirt," after which the defendant and seated man both fled (id.). We held that the defendant's first-degree robbery conviction had to be reduced to third-degree robbery, because "the man on the stoop did not actively participate in the robbery, nor did he display a weapon or take any action indicating that he had one" (id. at 222). It is unclear whether our holding rested on the lack of evidence that the man on the stoop was involved in the robbery, or that the lack of a movement by the man on the stoop meant that nothing had been "displayed." Thus, Mendez either has decided that some movement is necessary to meet the "display" requirement (which would require us to reduce Mr. Smith's conviction to third-degree attempted robbery), or else did not reach that issue, in which case it is now presented by this appeal.

IV.

I turn, then, to the record evidence in this case. On the morning of November 1, 2011, Mr. Smith, a homeless 41-year-old, entered a check-cashing store in Queens, where Ms. Almeida was working. She was the only employee there, and was

separated from Mr. Smith by bulletproof glass.  Ms. Almeida, the only witness to Mr. Smith's conduct, testified that he entered the store, asked for money, stayed approximately 10 minutes, and then said he had a gun.  Ms. Almeida pressed a silent alarm; Mr. Smith walked out of the store about five minutes later and was apprehended several minutes later, walking down the street about eight blocks away.

Ms. Almeida's trial testimony does not establish that Mr. Smith made any sort of movement of his hoodie-covered hand the entire time he was in the store.  The prosecutor asked Ms. Almeida a series of questions concerning "what [Mr. Smith was] doing, if anything, with his hands."  She repeatedly described the defendant as "holding" his hand under the bottom of his hoodie, which the trial judge described as "under the shirt at the waist."  She further testified, "I don't know whether he was holding or not.  I was not able to see anything . . . ."

On cross-examination, Ms. Almeida repeated several times her description of the defendant as "holding" his hand under his hoodie "all the time" he was in the store.  Defense counsel specifically asked, "Would it be fair to say he reached under his hoodie?"  Ms. Almeida decidedly responded, "No.  He was like this, like (indicating) . . . ."  Defense counsel asked again, "So he lifted his hoodie up?"  Ms. Almeida responded, "The

hoodie was like this (indicating). . . . Covering his hand."[6]

The People interpret the record evidence as demonstrating no movement of Mr. Smith's concealed hand while inside the check-cashing store (see e.g. Resp's App Div Brf, at 4-6 ["all while holding his hand under his shirt at his waist"; "threats made while he had his hand deliberately and strategically placed under his sweatshirt at his waist"; "he held it under his shirt, at his waist"; "defendant's own conduct in holding his hand under his shirt at his waistband"]; 12 ["(Ms.) Almeida testified that defendant 'was holding something' under his shirt at his waist and she demonstrated for the jury how he held his hand under his hooded sweatshirt"]; 14 ["defendant held his hand in his sweatshirt at the waist"]).

The majority concedes that it is unclear whether Mr. Smith placed his hand under his sweatshirt before or after entering the store.  In any event, Ms. Almeida repeatedly stated that Mr. Smith held his hand under his sweatshirt and, when specifically asked if he reached under his hoodie, she responded, "No."  When Mr. Smith was arrested a few minutes after leaving

_____

    [6]  Immediately after that, defense counsel asked, "Would it be his right hand or left hand, he put one of his hands under his hoodie," to which Ms. Almeida responded, "Exactly."  In context, it is not possible to read "he put" as describing motion observed by her; Ms. Almeida had specifically and repeatedly described Mr. Smith as "holding," and expressly denied that Mr. Smith had reached under or lifted up his hoodie.  It is clear the question focused on Ms. Almeida's inability to remember which hand Mr. Smith had under his hoodie, not whether she observed him putting it anywhere or moving it.

the store, the officers frisked Mr. Smith and found "[n]othing."

Nothing in the record suggests that Mr. Smith possessed any item whatsoever, let alone an object that appeared to be a firearm.  The only witness to the crime testified that she did not see a gun -- or, for that matter, anything at all.  Accordingly, the evidence is legally insufficient for a jury to reasonably conclude that Mr. Smith displayed what appeared to be a firearm.

It is no answer that Mr. Smith might have been able to avoid a conviction for first-degree attempted robbery by seeking an instruction on the affirmative defense, thereby reducing his conviction to second-degree attempted robbery, for two reasons.  First, and most fundamentally, the State bears the burden to prove every element of the offense beyond a reasonable doubt, and "displaying what appears to be" a firearm is an element of both first- and second-degree robbery.  If, as seems clear, the legislature did not intend that the verbal threat of a firearm coupled with a concealed hand would count as "display," the State has not met its burden.  Shifting that burden to a defendant, so that she or he must disprove an element of the offense, is cold comfort.  Second, because "display" is an element of both first- and second-degree attempted robbery, absent a display, the proper offense is third-degree attempted robbery, not second.

There may not be much of a principled distinction between someone who moves a hand into his or her pocket while

announcing the possession of a firearm and someone whose concealed hand is motionless while he or she claims to have a gun. But there is also no principled distinction between someone who threatens to shoot when his or her hands are visible and not moving towards anything (which cannot constitute first- or second-degree robbery), and someone who moves his or her hand towards a pocket while threatening to shoot (which <u>Lopez</u> erroneously holds is first-degree robbery).

In any event, the legislature clearly intended that neither of those would constitute first-degree robbery. Affirmance here is not compelled by stare decisis, and adherence to the clear intent of the legislature and Governor is more important than pursuing our mistaken course to its end.[7] I therefore respectfully dissent.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed. Opinion by Judge Fahey. Chief Judge DiFiore and Judges Rivera, Stein and Garcia concur. Judge Abdus-Salaam concurs in result in a separate concurring opinion. Judge Wilson dissents in an opinion.

Decided March 28, 2017

---

[7] Because we have deviated quite a way from the legislature's intent, "the [l]egislature's competency to correct the misinterpretation is readily at hand" (<u>People v Hobson</u>, 39 NY2d 479, 489 [1976] [internal quotation marks omitted]) to restore its original purpose that demonstrably unarmed robbers are treated differently from those with firearms.